# D. D. FELDMAN V. THE STATE.

No. 20550. Delivered April 17, 1940.
Rehearing Denied February 19, 1941.
Concurring Opinion February 19, 1941.
Application of State for Leave to File Second Application for
Rehearing Denied March 12, 1941.

The opinion states the case.

*Fullbright, Crooker & Freeman* and *C. A. Leddy,* all of Houston, for appellant.

*W. C. McClain,* of Conroe, *R. A. Bassett,* of Richmond, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was indicted in Montgomery County, charged with having conspired with seven others to use a forged tender in order to induce the handling and transportation of oil produced in violation of law, and upon a conviction he was awarded a penalty of five years in the penitentiary.

It appears that under the law and the rules of the Railroad Commission of Texas, in order that crude petroleum should be allowed to move in the pipe line common carriers of this State, it is necessary that a proper tender be first obtained, which tender is initiated by means of a sworn statement made by the person desiring to move such oil in the lines of such carrier. However before such sworn tender can operate as a warrant or direction for the moving of such oil it is necessary that same be approved by some agent of, or proper person representing, the Railroad Commission. The gist of the herein charged offense lies not in the making of a forged tender, but in the entering into a conspiracy together with seven other persons upon the part of this appellant to use a forged tender for the purpose of transporting crude petroleum oil produced in violation of our State laws. In short, the appellant was charged not with having forged the instrument, nor with having used the same knowing it to have been forged, but he was charged

with conspiring with certain others to use such instrument.

Herein we are early met with the contention on appellant's part that the venue of this case, which was originally laid in Montgomery County, was improperly thus placed, and that the Brazoria County District Court, where the case was moved on a change of venue, was without jurisdiction herein.

It is here granted that the State must necessarily show that venue originally was properly laid in Montgomery County, otherwise the trial in Brazoria County must have been without warrant of law.

As above noticed, this is not a prosecution for making or using a forged tender, but the allegations in the indictment in the fourth count thereof, which was the one submitted by the court to the jury, charge that the mentioned person conspired to use a forged tender in the movement and transportation of oil in Montgomery County, Texas. Under the statute the county wherein the conspiracy was to be executed is one of the counties of venue, and this case properly originated in Montgomery County. Art. 205, C. C. P. reads in part as follows: "Conspiracy may be prosecuted in the county where the conspirary was entered into, or in the county where the same was agreed to be executed; * * *."

We held in Kutch v. State, 32 Texas Crim. Rep. 184, 22 S. W. 594, that: "The Code declares that the offense of a conspiracy may be prosecuted in the county where the conspiracy was entered into, or in the county where it was agreed to be executed (Code of Criminal Procedure, article 221) (now 205) ; that is to say, the venue of the conspiracy may be laid in El Paso County if the agreement was to be carried out in that county."

To the same effect is the holding in Dawson v. State, 38 Texas Crim. Rep. 9, 40 S. W. 731. In that case the agreement or conspiracy was entered into in Dallas County to burn a house in Milam County. Venue in Milam County was upheld by this court. It is immaterial, so we think, where the conspirators may have met for the purpose of entering into their agreement, if they did thus meet,—nor where their negotiations might have been had one with the other; the gist of this offense is where was the final place of a full fruition of their plannings. The oil to be moved thus unlawfully was to be moved in Montgomery County; that county was the final goal of their conspiracy, and in accordance with the statute, there the venue can be fixed. All assignments and bills of exceptions relative to the venue laid in Montgomery County are overruled.

Appellant's assignment of error No. 2 is overruled. It relates

to the trial court's charge wherein he says that: "Circumstantial evidence is competent to prove the existence of a conspiracy." The objection therein is directed at the word "competent," which it is contended was on the weight of the evidence. We think the criticism is without merit. The court only meant that such evidence, if believed, would be sufficient to establish a conspiracy.

Appellant's assignment of error No. 3 is based on a statement made by the learned trial judge in a colloquy between attorneys on opposing sides in which the trial court, upon being appealed to, made the unguarded statement that he would have to agree with the State's attorney in the matter at difference between the attorneys. This matter will doubtless not occur again. Such was after all but an academic question, at difference between enthusiastic advocates upon each side, and a casual remark by the court, when appealed to, indicating his opinion that the State's attorney was correct in his interpretation of a certain illustration of the effect of a charge on circumstantial evidence, did not operate to appellant's injury, so we are convinced, and was not a verbal charge to the jury as contended by appellant.

Appellant's next assignment of error is No. 4, and is based on the trial court's refusal to grant a motion for an instructed verdict in that appellant contended that it was not shown that the tenders relied upon by the State, and introduced in this cause, had been executed without lawful authority. With this contention we find ourselves unable to agree. The testimony, so we think, is sufficient, as presented in the record, to allow the jury to find that such tenders were executed without lawful authority.

Bills of exception Nos. 8 to 12 inclusive are concerned with the same transaction, are grouped by appellant in his brief, and will all be governed by our ruling on the general proposition presented thereby.

The trial court permitted, over appellant's objection, the details of a certain conversation between Olin Culberson, an employee of the Railroad Commission, and one Shuford Farmer, at the Blackstone Hotel in Fort Worth, in April, 1937, to the effect that Farmer, claiming to represent one Frank Bennett, made an attempt to bribe, and did offer to bribe the said Culberson to "cover up that 35000 barrel tender down there in the Conroe matter." The remaining bills all relating either to some one over-hearing a conversation between Farmer and Bennett, or a conversation between Farmer and one Neal Powers. In bill No. 8 we find set forth the conversation alleged to have

been had with Mr. Culberson by Farmer, which was objected to by appellant as follows:

"Shuford Farmer came into my room and told me that he had a proposition that he wanted to put to me on behalf of a client of his, and he said, 'I don't want you to get sore at me when I do it,' and I asked him to sit down and tell me what his proposition was, and then he asked me if I had my dictaphones in the room, and I told him I didn't engage in the kind of business that I had to have dictaphones around, and to tell me what he had on his mind; that I was working on some notes that I had taken in a case that day and that if he had any business with me to get through with it; and he said he had a client who was looking for an auditor who knew something about the oil business, as well as income tax matters, and that I had been recommended to him as one that knew something about it, and that his client was wanting to employ me in his service as an auditor. I told him that I wasn't an auditor; that I wasn't concerned with or interested in any proposition that any client that he might have could make to me, with reference to that kind of work that the work I was engaged in satisfied me and I wasn't looking for any change of occupation or employment; and he got up and started around the bed; the bed was setting out in the middle of the room between us and the door, and when he got around to the corner of it, he just turned around and said, 'Well, Hell, Olin, you can just call the baby a boy or girl, as you want to, but I am going to tell you what I came up here for,' and he said, 'I represent the crookedest son of a bitch in the oil business; his name is Frank Bennett, and I am up here to offer you for him $2,500.00 if you will cover up that 35,000 barrel tender down there in the Conroe matter,' and he stood at the foot of the bed, and repeated again, 'You can call the baby a boy or a girl; in other words, yes or no'; I told Shuford I was mighty glad that his employer had sent a one-armed man to me, but I was sorry that he did not come himself so that I could throw him out of the window and that he had better get out before I forgot that he had just one arm and try to do it anyway; Yes, sir, he is a one-armed man, and he said, 'Well, don't get sore at me; I am just up here for my client;' and I told him I supposed we had better not talk any more about it, that he had better get going, and he left."

This testimony was vigorously objected to on many grounds, among them was the objection that Farmer was not one of the alleged conspirators, nor charged as such; the defendant was not shown to have been present, nor to have any connection

therewith; that such conversation took place long after the culmination of the conspiracy, if such there was shown, was hearsay, res inter alios acto, and many other objections. These objections, we think, were practically all of them good, and should have been heeded by the trial court. There is no connection shown between the man Farmer and appellant, and the only connection shown between Bennett and appellant is the fact that both of their names are mentioned in the indictment. This matter occurred after the alleged forged tenders had been used, and the conspiracy to thus use them had been consummated. The matter as to appellant Feldman was hearsay, and was also a matter governed by the rule of res inter alios acto, for which appellant should not have been held; that the showing of an effort to bribe a State servant would be prejudicial to one on trial for an offense before a jury can not be denied, and may be inferred by the verdict of five years, the highest penalty provided by law, returned herein. Being thus convinced, we sustain all bills of exceptions relative to this conversation with Mr. Culberson concerning the attempt at bribery, as well as the bills relative to the conversation with one Neal Powers by Farmer.

In our judgment what we have said just above is sufficient to order a reversal of this case.

This is a large record, the transcript consisting of 131 pages, and the statement of facts of 765 pages, much of which consists of photostats of technical matters, not easily understandable by one unversed in their terminology. We have, however, gone over the record carefully, and are led to confess that we are in doubt as to the sufficiency of the evidence to show that appellant Feldman entered into a conspiracy to use forged tenders with anyone. We do find it shown by proof that he signed and swore to a certain tender for the moving of 9987.42 barrels of oil, the approval of which was alleged to have been obtained by the forging of the name of an agent of the Railroad Commission thereon showing a necessary approval thereof. However we do find in the statement of facts a verdict of acquittal by a jury of Montgomery County in a case wherein appellant was charged with using such a tender for the purpose of inducing another to transport illegally acquired oil.

The only other testimony that we have found that could be said to connect appellant with any of the conspirators, relative to the moving of illegally produced oil, which impressed us with probative force, is located in the testimony of Glenn H. McCarthy in which he relates a conversation with one Otis

Gibson, who is charged herein as being one of the conspirators, as follows:

"Some time thereafter, I saw Mr. Gibson again, but it is not quite clear in my mind at this time whether he was accompanied by any one or not at that time; you are referring to Mr. Feldman, I suppose; as I recollect, Mr. Feldman was in the office, either after or at the time of Gibson's visit this other time; Mr. Feldman's purpose in my office was for the purpose of the Bertrand lease. As to what statement was made in my office, either by Feldman, or in Feldman's presence, with reference to what would be the effect of purchasing the Bertrand lease from me, I will reply that the idea was first given by Gibson, and it was a proposal to me; I told him that I didn't want to have anything to do with this over-production business, and I didn't want to sell my oil under the market price, and I didn't want to fool with it at all, and I think we even wrote that in a letter; this letter, I believe, was sent to Mr. Feldman, that we weren't interested in doing it on that basis, or changing our pipe line; and Gibson then came back to me and said: 'well, suppose you sell the lease then, you are not doing anything wrong; you are not over-producing your wells, and you would be entirely in the clear; would you sell your lease?' I said: 'certainly, I will sell my lease, if I get the proper amount of money out of it, what I think is the value of it.' Mr. Feldman, this defendant here, was to buy my lease from me; and Mr. Gibson said that if we would agree to sell it on a very low cash payment and a real large oil payment, then they could go on and run this oil, if they saw fit, and be able to make me those large payments, and which was also in excess of the allowable."

It is to be noted that the deal above discussed in the presence of appellant is shown not to have been consummated and had no effect on the moving of any oil alleged to have been the subject of this indictment.

These are the salient facts, so far as our examination has shown us, as presented against this appellant. True, a conspiracy can be shown by circumstances, and usually must be thus shown because conspirators usually work in the dark and do not noise abroad their agreements to effect their illegal objects, and when circumstances are relied upon, as in this instance, they must exclude every other reasonable hypothesis than that of the appellant's guilt. We confess that such has not been the effect upon our mind after a careful reading and re-reading of this record. If this cause is again tried the evidence should be strengthened, if possible.

The cause, however, is reversed and remanded on account of

the error in admitting the conversation of Farmer with Culberson and other kindred matters related thereto.

The judgment is reversed and the cause remanded.

### ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The State has filed herein a vigorous motion for rehearing and, while we have considered it in its entirety, we are not discussing all questions raised by the motion in as much as we believe that portion of the original opinion which holds the evidence of the conversation between Shuford Farmer and Olin Culberson at the Blackstone Hotel in Fort Worth in April, 1937, correctly states the law. This makes it necessary to overrule the State's motion for rehearing. Perhaps we should not have intimated in our original opinion that we entertained doubt as to the sufficiency of the evidence. Such intimation is withdrawn, and we now express no opinion on that matter.

The State's motion for rehearing is overruled.

HAWKINS, Presiding Judge (concurring).

I concur in the opinion on the State's motion for rehearing upon authority of Sessions v. State, 37 Texas Cr. R. 62, in which accused was being prosecuted for the substantive crime of conspiracy, and which appears to be direct authority against the admission in evidence of the conversations that occurred at the Blackstone Hotel in Fort Worth.

### ON APPLICATION OF STATE FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

CHRISTIAN, Judge.

In the State's application for leave to file second motion for rehearing it is pointed out that we were in error in the original opinion and in the opinion on motion for rehearing in stating that the conversation between Shuford Farmer and Olin Culberson occurred in April, 1937. The record discloses that such conversation was had in April, 1936. We are constrained to deny the application. We quote from Hickman v. State, 247 S. W. 518, as follows:

"Second motions for rehearing will not be considered by this court, nor leave granted to file same, unless there be a sufficient showing in such application of the fact that in its original opinion, or opinion upon the motion for rehearing, the court has omitted to consider some matter, which, from the statement thereof in such application, is made to appear to this court so

vital to the proper disposition of the case as to lead us to conclude that we erred in failing to consider same, or else such application must present such facts, arguments, or citations in reference to some matter decided in the original opinion or that upon rehearing, as will lead this court from an examination of the application to conclude that our decision in such regard was so far wrong as that its correction would entitle the appellant to a second rehearing."

The application for leave to file second motion for rehearing is denied.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

HAWKINS, Presiding Judge.

