A. H. MONTGOMERY v. THE STATE.

No. 2391. Decided November 27, 1901.

**Arrest Without Warrant—Duty of Officer—Right of Resistance—Charge.**

Where an officer seeks to arrest a party without warrant for a disturbance of the peace,or for carrying a pistol, it is his duty to do so within the spirit of article 278, Code of Criminal Procedure; that is, he must make known to the person accused under what authority the arrest is made; and where the officer does not do this, but seized defendant without notifying him that he arrested him and of the capacity in which he was acting, defendant would have the right to resist such unlawful arrest and use whatever force was necessary to accomplish such resistance, viewed from his standpoint at the time. See opinion for charge of court upon the subject held erroneous and not warranted by the evidence.

Appeal from the District Court of Grimes. Tried below before Hon. J. M. Smither.

Appeal from a conviction·of manslaughter; penalty, three years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Joe Hall, on the 15th day of April, 1898, by shooting him with a pistol.

The opinion states the facts.

*W. W. Meacham,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at three years confinement in the penitentiary.

Appellant filed a motion in arrest of judgment, insisting that the indictment was insufficient. After a careful inspection of the same, we are of opinion that it is in the usual form, and appellant's objections are without merit. The following is, in substance, the testimony adduced upon the ·trial: C. J. Davis testified that he knew defendant, Montgomery, and deceased, Hall. Witness resided about one-fourth of a mile from the store at Bedias. The schoolhouse was within a few hundred yards of the store. There was a debating society at the schoolhouse on the night of April 15th. After the debate closed, deceased, witness, and others were standing by the side of the house, talking, and there were also others standing near. Deceased was rolling a cigarette. Witness heard some yelling down towards the graveyard, in or near the public road, and called deceased's attention to it. Deceased got his

horse, and about this time the yelling began down the road. Deceased being the constable of the precinct, immediately got on his horse, and started down the road in the direction of the yelling. After deceased had gone, passing a bunch of trees about twenty yards away, witness heard a shot fired down the road in the direction of where he had heard the yelling. Did not see deceased at the time any of the shots were fired. After the shooting, witness went down the road, and found deceased lying on the ground near the side of the public road. Five shots were fired in all. Between the first shot and the last there was a short interval, about two or three minutes. Deceased was not armed. The killing occurred about three or four hundred yards from the schoolhouse. Dr. Weathersbee testified that he was called to see deceased, and found him lying on the ground by the side of the public road leading from Bedias to Iola. When witness reached the place, "deceased was suffering a great deal of pain, and asked me if I thought he would live. I told him, 'No.' He said he did not think he would live. Deceased then said that at the time of the difficulty he rode up, and put his hand on the man's shoulder, and said to him, 'Consider yourself under arrest, brother,' and he shot me. Deceased said he did not know the name of the man who shot him, but Dakin, who was present, knew him." Coulson testified he was traveling down the road with defendant and several others; that when they had reached a point about 200 yards from the schoolhouse defendant shot off his pistol in the air. Witness and defendant were riding side by side along the public road. Witness did not hear any yelling in the crowd before the shooting. When defendant fired his pistol off in the air, he did not put it up; "and just after defendant fired the pistol a man [deceased] rode up behind us in the road, and put his right hand on defendant's shoulder, and said, 'Consider yourself under arrest, Bud.' Defendant said, 'I God, I reckon not;' and then the shooting began. Three or four shots were fired. Defendant left at once." Witness and the other parties remained with deceased a little while. Dakin testified: "I think deceased had defendant by the shoulder. Defendant told deceased to turn him loose, at least one time, maybe twice. Deceased did not tell defendant who he was, or that he was an officer, or that he had a warrant for him, or why he arrested him." Defendant testified that he did not know deceased, and did not know who he was the night he was killed; did not know that he was an officer or constable of Bedias precinct.

Appellant complains of the following portions of the charge of the court: "You are instructed that our penal statutes provide, if any person shall go into or near any public place, and shall rudely display any pistol or other deadly weapon in a manner calculated to disturb the inhabitants of such public place, he would be guilty of a misdemeanor coming within the provisions and classed by law as an offense against the public peace, and that any public road is a public place within the meaning of the law, and that a peace officer or any other person may without

warrant arrest any person committing such offense in his presence or within his view; also that the unlawful carrying of a pistol by a person on or about his person is also a misdemeanor, classed by law also as an offense against the public peace, and any person so guilty of unlawfully carrying a pistol may be arrested without warrant by any peace officer on his own knowledge that said person is so guilty of unlawfully carrying arms, or upon information of some credible person; and the law makes it his duty under penalty to make such arrest; and if you believe from the evidence beyond a reasonable doubt that the defendant was then and there guilty of both or either of above described offenses classed as offenses against the public peace, and that the same was then and there committed in the presence or within the view of the deceased, and that the deceased then and there knew that the defendant was then and there carrying on or about his person a pistol (if he was so carrying said pistol), and attempted to make a lawful arrest of the defendant for both or either of said offenses, under the circumstances described, and that the deceased was then and there a constable and peace officer of Grimes County, and that the defendant shot and killed the deceased, not for the purpose of protecting his person from unlawful violence, nor for the purpose of preventing an illegal or supposed illegal arrest, but for the purpose of killing the deceased, or of preventing the deceased from lawfully arresting him, then he can not justify on the ground of self-defense in killing deceased (if he killed him), as done in his lawful self-defense, and he would be guilty of murder in the first degree, as you may find from the evidence beyond a reasonable doubt the existence of express malice as hereinbefore explained to you, or of murder in the second degree as you may find from the evidence that express malice has not been established by the evidence beyond a reasonable doubt as an existing fact, and of the existence of implied malice on the part of defendant as hereinbefore or may be hereinafter explained to you in this charge, or of manslaughter as you may find from the evidence, the existence of sudden passion aroused by an adequate cause as the same is hereinbefore or may be hereinafter explained in this charge." "Or if you shall believe that the deceased, when he attempted to arrest the defendant (if he did so), did not know that defendant was then and there unlawfully carrying on his person a pistol, or that the offense committed against the public peace committed by defendant (if committed in rudely displaying a pistol in a public place) was not committed in the presence or sight of the deceased, then such arrest would be illegal; or if he did know that the defendant was then and there unlawfully carrying on his person a pistol, or that such rude displaying of a pistol by the defendant in a public place (if committed) was committed in the presence or in the sight of the deceased, and that the deceased, when, as an officer, he attempted to arrest the defendant (if he did so), had the time and opportunity to inform the defendant by what authority he was making such arrest, and the reasons therefor, before the defendant shot him, and did not so inform said defendant, then such arrest or attempt at

the arrest of defendant would be illegal; and in case you believe such arrest or attempt to arrest by the deceased of the defendant was illegal, then the defendant had the right to resist such illegal arrest, or attempt at arrest, and to use all the force that was necessary, or from all the facts and circumstances surrounding him at the time, and viewed from his standpoint at the time, reasonably appeared to him was necessary, to resist such arrest or attempt at arrest; and if he used no more force than above described he would be justified, and you will acquit him; but in resisting such arrest or attempt at arrest, if you shall believe from the evidence beyond a reasonable doubt that he used more force than was necessary, or from all the facts and circumstances surrounding him at the time, and viewed from his standpoint at the time, reasonably appeared to him was necessary, to protect himself from such arrest or attempt at arrest, and that the defendant shot and killed the deceased by the use of such unnecessary and illegal force, he would be guilty of murder as you may find from the evidence the existence of malice, or of manslaughter as you may find from the evidence the existence of sudden passion, arising from an adequate cause, rendering his mind at the time incapable of cool reflection." His objections are that the charges are upon the weight of the evidence, calculated to impress the jury with the idea that under the circumstances therein set forth, as defining offenses against the public peace, the peace officer must act under a penalty for failure to make such arrest; and to impress the jury with the idea that defendant used more force than was necessary; and under the facts of this case such charges should not be given. We do not think the facts, as stated above, authorized the jury to be charged on the duty of an officer to make an arrest at all. Under article 342, Penal Code, which is a special provision, and is not controlled by other statutes relating to arrests, it is expressly provided that a person violating the law by unlawfully carrying arms may be arrested by a peace officer, without warrant, upon his own knowledge or upon information of some credible person. Under said article a peace officer may arrest upon information of a credible person, although the offender may be in a distant part of the county at the time the information is given; and, although the arrest may not be immediately made, or attempted, yet said arrest, if properly made, would be lawful. Jacobs v. State, 28 Texas Crim. App., 80. Then the question arises, how must the arrest be properly made? Article 278, Code of Criminal Procedure, provides: "In executing a warrant of arrest it shall always be made known to the person accused under what authority the arrest is made, and if requested the warrant shall be exhibited to him." The law contemplates that the warrant directing the arrest of a person charged with crime will be in the possession of the officer when he makes the arrest under it, for he is required to exhibit it if called upon to do so. This is based upon a wise public policy, one purpose of which is that the officer shall exhibit such evidence of his authority to make the arrest as will be deemed sufficient to take from the person who is arrested all right to question the authority of the

officer.   Cabell v. Arnold, 86 Texas, 102.   However, if the party about to be arrested knows the capacity and purpose of the officer, it is not necessary for the officer to make known said purpose, or in what capacity he is acting.   Plasters v. State, 1 Texas Crim. App., 673.   Under article 342, Penal Code, supra, and the other articles relating to disturbances of the peace, arrests may be made without warrant; but clearly this must be done within the spirit of article 278, Code of Criminal Procedure, —that is, if a person proposes to arrest another for a disturbance of the peace, or for carrying a pistol, he must make known to the person accused under what authority the arrest is made.   The other provisions of said article requiring him to exhibit a warrant do not apply, because the law authorizes him to arrest without warrant under the conditions above stated.   Now, reverting to the facts of this case, we find that appellant was going along a public road at night, and shot off his pistol; that he did not know deceased; did now know the capacity in which deceased was acting; and without any character of warning on the part of deceased, without any notification on his part that he was an officer, without any statement from him that he arrested him for violating the law, he was seized by deceased.   Thereupon appellant protested once or twice, as stated by one of the witnesses, against such seizure, and then fired at deceased several times, one of the shots killing him.   There is no evidence in the record that the offense committed by appellant was in the presence of deceased, nor is there any statement that any credible person had informed deceased that defendant had committed any offense authorizing him to arrest him, under the above statute, without warrant.   However, if it may be conceded that deceased was within view of the offense committed by appellant,—and there are some circumstances indicating that he probably saw defendant shoot the pistol,—then, when he approached defendant, it was his duty to notify him that he arrested him, and of the capacity in which he was acting.   In the absence of such notice, defendant would have the right to resist such unlawful arrest, and use whatever force was necessary to accomplish such resistance.   Of course, in doing so he must not use any more force than is necessary, viewed from appellant's standpoint at the time of said resistance.   If he does, then he might be guilty of manslaughter or murder in the second degree, as the circumstances might justify the jury in finding under proper charges.   For a full discussion of these questions, see Miller v. State, 32 Texas Crim. Rep., 320; Ex parte Sherwood, 29 Texas Crim. App., 334.   The trial court erred in giving the charges complained of, as the same were not authorized by the evidence adduced, for there was no evidence showing appellant knew deceased was an officer, or was attempting to arrest him for an offense.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*