JOHN TEAGUE V. THE STATE.

No. 5098.   Decided October 30, 1918.

Murder—Negligent Homicide—Aggravated Assault—Simple Assault—Charge of Court.

Where, upon trial of murder and a conviction for negligent homicide of the first degree, the evidence showed an assault by shooting at the party injured to frighten him, but with no intention of killing him, the court should have instructed on simple assault and not upon negligent homicide, and he should have also charged under the facts on aggravated assault, and also in the defense of property, and a conviction for negligent homicide of the first degree is not sanctioned by the testimony.

Appeal from the District Court of Bowie.   Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of negligent homicide; penalty, a fine of seven hundred and fifty dollars.

The opinion states the case.

*Mahaffey, Keeney & Dalby,* for appellant.—On question of charge of court: McCray v. State, 63 Texas Crim. Rep., 522, 140 S. W. Rep., 442; Hamilton v. State, 64 Texas Crim. Rep., 175, 141 S. W. Rep., 966.

On question of charge in defense of property: Slack v. State, 67 Texas Crim. Rep., 460, 149 S. W. Rep., 107.

On question of aggravated assault: Lee v. State, 44 Texas Crim. Rep., 460; Huddleston v. State, 70 id., 260; House v. State, 75 Texas Crim. Rep., 338, 171 S. W. Rep., 206.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of negligent homicide in the first degree, his punishment being assessed at a fine of $750.

The facts, in substance, show that appellant and a relative by the name of Teague had gone out the night of the homicide "possum hunting." The deceased, Long, and a friend had also gone "possum hunting," but not in connection with appellant and his relative. Appellant and another party, who was also related to him, owned a field or patch of ribbon cane which they had cut and piled for the purpose of making syrup or molasses. While out hunting they were near this ribbon cane when deceased and his friend came, took a lot of the cane and went away. Appellant's theory of it was that when about seventy-five yards from where they took the cane they sat down and began eating or chewing it, with a lantern between them. The State contends that it was 200 yards or more from the place they took the cane to where the shooting occurred. The testimony shows that appellant and deceased approached within about sixty yards, and that appellant stated that he was going to shoot to scare the parties, and that he did shoot twice with a shotgun. The shot used were what the witnesses called "squirrel shot" or "No. 4." Appellant's testimony is to the effect that he thought they were about ninety or one hundred yards from them. The State's testimony contends they were fifty-four steps from the parties at the time of the shooting. The State's evidence shows immediately before the shooting a dog with the deceased and his friend growled and they put out their lantern, and just as they were putting it out, or had put it out, the shots were fired. Appellant's testimony shows that he shot only to frighten, and that he did not know until the next day that he had shot anybody. The indictment charged him with murder. The court submitted murder and negligent homicide of the first degree, the jury convicting under the latter charge.

Several questions are suggested in the way of exceptions to the court's charge and the refusal to give special requested instructions. Among others, it is contended that appellant should have had the benefit of a charge to the effect that if he killed deceased when taking the property, or within gun shot of where it was taken, it would be justifiable under the statute. If he shot intentionally to kill or to wound under those circumstances, we are of opinion under his testimony this issue was raised, and the court should so have instructed the jury. The statute justifies a killing while the property is being stolen at night, or where the party taking it is within gun shot distance of the place where taken.

It is also contended that appellant should have had the benefit of a charge on the defendant's theory that he shot to frighten and not to injure. He also contended that he should have had the benefit of a charge on aggravated assault on the theory that if he shot to hit, that the means used were not ordinarily calculated to kill. His testimony was that he thought he was ninety or one hundred yards from the parties. The State shows he was fifty-four steps. The shot used were No. 4, or squirrel shot. We are of opinion that the question was raised, that is by the means used it did not evidently appear he intended to kill. A shotgun usually may be considered a deadly weapon, but not

necessarily so. Had the gun been loaded with buck shot, at that distance, and he shot to kill, then the issue would be raised that he shot and killed justifiably because deceased had stolen the property, and was within gunshot range. On the other hand, we would take it as a correct conclusion that ordinarily at that distance squirrel shot would not be calculated to kill. Several shot struck the body of deceased, but none of them made any particular impression upon him except one shot which entered his eye, and from which he subsequently died. We are of opinion that the court was in error in not charging on aggravated assault upon the theory that he did not intend to kill. Upon another trial the issues of aggravated assault and simple assault should be submitted by the court as basis for conviction. It is also a contention of appellant that he should have had the benefit of the doubt in shooting not for the purpose of killing. If he shot to frighten, this would be a simple assault under article 1013, P. C., which provides that: "It follows that one who is, at the time of making an attempt to commit a battery, under such restraint as to deprive him of the power to act, or who is at so great a distance from the person assailed as that he can not reach his person by the use of the means with which he makes the attempt, is not guilty of an assault. But the use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another, and under circumstances calculated to effect that object, comes within the meaning of an assault." There are quite a number of decisions collated by Mr. Branch in his valuable Annotated Penal Code on page 916, to the effect that if defendant unlawfully presents a dangerous weapon, or the semblance thereof, or unlawfully shoots the weapon, with intent only to alarm or scare, or otherwise unlawfully uses it in an angry or threatening manner, with intent to alarm another, and under circumstances calculated to effect that object, he is guilty of a simple assault. Without collating these cases we simply refer to said page of Mr. Branch's work. Under this view of the law negligent homicide of the first degree was not in the case. The statute provides that if any person in the performance of a lawful act shall, by negligence and carelessness, cause the death of another, he is guilty of negligent homicide of the first degree. A "lawful act" is one not forbidden by the penal law and which would give no just occasion for a civil action. If appellant shot to frighten and used a dangerous weapon, this, under article 1013, P. C., would be an assault, and, therefore, the shooting would not be negligent homicide of the first degree. We are of opinion that a conviction for negligent homicide of the first degree is not sanctioned by this testimony. The jury acquitted of murder, therefore it was not an unlawful killing. They must have found under the charge of the court that the shooting was lawful in order to have found appellant guilty of negligent homicide of the first degree. If the shooting was unlawful, then negligent homicide of the first degree was not a question in the case. We are of opinion this was an assault under the testimony of the appellant to

the effect that he shot to frighten but with no intention, of killing. This would be under the statute, as we understand it, simple assault, which would be an unlawful act and a violation of the statute defining an assault.

For the reasons above stated this judgment is reversed and the cause remanded.

*Reversed and remanded.*