## LONNIE HARVEY CLINE V. THE STATE.

No. 23573. Delivered June 18, 1947.
Rehearing Denied October 15, 1947.

*Newton Kennedy, J. H. Martin,* and *A. S. Baskett,* all of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

The offense is murder. The punishment assessed is death.

Appellant brings forward a number of complaints, each of which he contends constitutes reversible error.

His first contention is that the evidence is insufficient to sustain his conviction and, therefore, the trial court erred in declining to peremptorily instruct the jury to acquit him. We are of the opinion that the evidence is ample to sustain the conviction.

The record reflects that on the night of December 22, 1945, Clyde Freddy Mears (the deceased), his wife, W. R. Kennedy, Mrs. Mildred Frances, and Bobbie Bowen went in automobiles to the Sylvan Club located west of Oak Cliff in the City of Dallas. Mr. and Mrs. Mears went in their coupe while Kennedy, accompanied by Mrs. Frances and Miss Bowen, went in his coupe. Upon their arrival at the club, they parked their cars, locked the doors, and then entered the club where they ate, drank and danced until about 1:00 A. M., at which time they prepared to leave for their respective homes. Upon their arrival at their automobiles, they discovered that Kennedy's car had been broken into and some person, with his head under the dashboard and one foot protruding from the side door, had apparently taken charge of the coupe. Kennedy approached the car from the rear, tapped on the turtleback and remarked: "Buddy, you are in the wrong car, aren't you?" Whereupon

the party jumped out of the car and fled. Mr. Mears and Kennedy pursued him, Mears leading the chase with Kennedy following a short distance in the rear. They chased the fleeing man four or five hundred yards into a field of high weeds and against an old barbed-wire fence when Kennedy lost sight of them. Kennedy stopped for a moment listening for the purpose of locating the whereabouts of Mears and the fleeing man, when suddenly he heard Mears calling for Kennedy to come to him; that he had been cut. Kennedy responded to the call and found Mears lying on his back in the weeds. Kennedy picked him up and carried him to the street, then called an ambulance, but when it arrived, Mears had died from the effects of a stab wound in the lower part of the abdomen.

About 1:30 A.M., appellant stopped a cab driver and engaged him to take him to Eagle Ford and Turtle Creek. Appellant entered the cab, took a seat beside the cab driver, and while they were on the way to appellant's destination as indicated, he complained of a leg injury, pulled up his pants, showed the cab driver his injury and remarked that he "had been cornered and had gutted a man", at the same time displaying a long-bladed spring-back knife.

Appellant's plea was an alibi which he supported by his own testimony and by that of other witnesses.

His contention seems to be that at the time in question he had not committed any felony in the presence of Mears and Kennedy, or either of them; that, therefore, their attempt to arrest him without a warrant was illegal and that the court should have peremptorily instructed the jury to acquit him. With this contention we do not agree. The State's evidence shows that appellant broke into the car; that he took possession thereof, and was apparently working under the dashboard, which would justify the inference that he was endeavoring to arrange the wires under the dashboard for the purpose of making connection with the ignition and driving the car away when he was discovered by Kennedy.

Article 1412, P. C., reads as follows:

"To constitute 'taking' it is not necessary that the property be removed any distance from the place of taking; it is sufficient that it has been in the possession of the thief, though it may not be moved out of the presence of the person deprived

of it; nor is it necessary that any definite length of time shall elapse between the taking and the discovery thereof; if but a moment elapse, the offense is complete."

Article 212, C. C. P., provides as follows:

"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or an 'offense against the public peace.' "

Article 325, C. C. P., is as follows:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

Whether or not appellant took possession of the automobile in question with the intent to appropriate it to his own use and benefit and deprive the owner of the value thereof, or was merely tampering with it or some part of the mechanism (which under Articles 1344, 1345, and 1346, P. C., would be but a misdemeanor) was an issue of fact for the determination of the jury. If from all the facts and circumstances the jury believed beyond a reasonable doubt that appellant did take possession of the automobile with the intent to appropriate it to his own use and benefit and to deprive the owner of its value, then he was guilty of a felony, notwithstanding he had not driven it away; and his arrest or attempted arrest was legal. But, if the jury found that he was merely tampering with some part of the mechanism of the automobile which is but a misdemeanor under the articles mentioned herein, the arrest or attempted arrest was illegal. If the arrest or attempted arrest was illegal, then the law gave appellant the right to resist by the use of force such illegal arrest, taking care not to use greater force than appeared to him, viewed from his standpoint at the time, to be necessary to prevent such arrest. The law giving him this right, he would, if the facts raised the issue, be justified in exercising it, and the trial court so instructed the jury.

His next contention is that the court erred in instructing the jury that if they believed from the evidence beyond a rea-

sonable doubt that the defendant, Lonnie Harvey Cline, committed a felony or was in the act of committing a felony, to-wit: theft of property over the value of fifty dollars in the presence and within view of Clyde Freddy Mears, and they further believe from the evidence beyond a reasonable doubt that the said Clyde Freddy Mears thereupon attempted to arrest the defendant, * * * that then the acts on the part of Clyde Freddy Mears constituted a legal arrest. Appellant claims that the court enlarged and extended the statute by including in his charge "or was in the act of committing a felony, to-wit: theft of property over the value of Fifty Dollars."

We think it would not be necessary to limit the power of a person committing a felony to the instant act, and thus allow his arrest merely at the present moment that he actually took possession of this stolen property by opening the window and getting into the automobile. If such were the law, the thief could calmly drive away after having entered the car without being seen and defy any person to arrest him unless such arrest was attempted while he was in the act of making an entry into the automobile and before he had driven the same away. Surely, under Art. 325, C. C. P., Mr. Mears had the right to prevent the consequences of theft by seizing the property which had been stolen or was in the process of being stolen and bringing it (the property) with the supposed offender, if he could be taken, before a magistrate. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay. We also think the theft of the car could be a continuing act and not confined merely to the opening of the window.

The trial court submitted to the jury the question of whether or not appellant had committed a felony or was in the act of committing a felony in the presence of the deceased, and unless they so believed beyond a reasonable doubt, then the attempted detention of appellant was illegal and he should be acquitted. In other words, unless the jury believed that appellant had stolen or was stealing this automobile in Mears' presence, then they should acquit him. We think this to be a correct enunciation of the law and therefore overrule appellant's objection to such charge.

It is also contended that the trial court erred in his charge to the jury in that, over appellant's objection, he failed to

charge on the law relative to murder without malice; and it is suggested that if Mr. Mears used more force than was necessary in order to take appellant into his custody, same might have furnished adequate cause. In the first place, there is no testimony in the record upon which a charge on adequate cause could be based. Appellant offered an alibi, and proved by certain witnesses that at the time Mr. Mears was killed, he was at another and different place and therefore could not have been the person who took Mr. Mears' life. Appellant also testified and denied that he was at such place and denied that he killed the deceased. There was no testimony from anyone who was at the actual scene of the killing save a statement by appellant to Robert W. Cook, a taxicab driver. Cook testified that in the early morning hours of December 23, 1945, (the day of the killing) he was driving his cab and was near the place where Mears was killed, and that he knew appellant and saw him on Ross and Henderson Streets; that appellant waved at him; that Cook stopped and picked him up and appellant got on the front seat with Cook; that he seemed a little nervous, like he was exhausted and out of breath; that he wanted to go out in West Dallas; that it was about 1:00 or 1:30 in the morning; that it was approximately two miles from the Sylvan Club near where Mears lost his life. Appellant was groaning and claimed that his left leg was cut. He showed the place to Cook and said that he had run through a barbed-wire fence and cut himself. Appellant had a black-handle knife in his hand, and "it had a button on it that you can flip it open." It was a spring knife, and the blade was about four inches long. He was flipping it open and closing it. "Well, he said he had gutted somebody out in the neck of the woods; had him cornered up. Yes, sir, that is the only explanation he gave me about any of it, and I took him on and left him at that place." Again, on cross-examination, the witness Cook testified:

"Well, on that occasion he just said he gutted this man out there in the woods, and he said he didn't like to be cornered, bragging about it. Yes, he told me this man had him cornered, yes, sir. I don't know that the man had driven him into a corner. He said that he gutted a man out in the neck of the woods that cornered him there. He gutted him. That is his exact words. The first thing he said to me when he entered the cab, well, mostly kind of groaning about his leg hurting him. Well, he was just groaning. He rubbed his leg a little bit, and then he pulled up his britches leg and showed me a kind of cut there, and he was telling me how he gutted a man out there, had him cornered, and he kept moaning around, and was flipping this

knife up and down in his lap. That is all he said, kept groaning all the time; told me where to take him. He said he gutted the man in the neck of the woods. He did not mention the Sylvan Club. Yes, sir, he told me nothing else other than a man had cornered him out there in the woods. Cornered in the woods; yes, sir, I remember that distinctly. He didn't say anything about retreating. He said he was cornered, yes, sir. No, sir, he didn't say that this man he gutted was going to him. I didn't ask him anything about it."

This is a resume of all the facts that were testified to relative to what took place at the actual scene of the killing. We find naught therein appearing upon which to base an issue of adequate cause. It is only shown that Mears cornered him and that appellant gutted Mears.

Again, in the second place, a killing committed by an accused while he was in the commission of a burglary or theft at nighttime, such killing is upon malice and is punished as such.

It will be noted that the trial court, doubtless in an excess of caution, gave appellant a charge on self-defense. In our judgment, under the facts shown herein, appellant had no right of self-defense under Art. 1222, P. C., which reads as follows:

"Homicide is justifiable when inflicted for the purpose of preventing murder, rape, robbery, maiming, disfiguring, castration, arson, burglary and theft at night, or when inflicted upon a person or persons who are found armed with deadly weapons and in disguise in the night time on premises not his or their own, whether the homicide be committed by the party about to be injured or by another in his behalf, when the killing takes place under the following circumstances:

"1. It must reasonably appear by the acts or by words coupled with the acts of the person killed that it was the purpose and intent of such person to commit one of the offenses above named.

"2. The killing must take place while the person killed was in the act of committing the offense, or after some act done by him showing evidently an intent to commit such offense.

\* \* \* \*

"8. In cases of burglary and theft by night, the homicide is justifiable at any time while the offender is in the building or

at the place where the theft is committed, or is within reach of gunshot from such place or building."

We held in Whitten v. State, 29 Tex. App. 504, 16 S. W. 296, that it made no difference whether the deceased, at the time he was killed, had abandoned the stolen property and was fleeing from the place of the theft, if he was killed while within reach of gunshot of the place of the theft. See also Teague v. State, 84 Tex. Cr. R. 169, 206 S. W. 193.

Again, we held in Williams v. State, 120 Tex. Cr. R. 484, 48 S. W. (2d) 304, as follows:

"In his motion for a new trial he alleged that the court was in error in omitting affirmative instructions to the jury covering the law of self-defense, the lack of intent to kill, and duress. The issue of self-defense was not raised. Deceased had the legal right to kill appellant to prevent the burglary. Subdivision 8 of article 1222, P. C., provides: 'In cases of burglary and theft by night, the homicide is justifiable at any time while the offender is in the building or at the place where the theft is committed, or is within reach of gunshot from such place or building.' By his own conduct, appellant forfeited his right of self-defense. McKee v. State, 118 Tex. Cr. R. 479, 42 S. W. (2d) 77. Under the facts reflected by this record, it would be a strange doctrine that would accord to the accused the right of self-defense."

A killing by an accused while in the act of committing a burglary or theft at nighttime, under the old line of decisions prior to the change in the law of murder, was murder in the first degree; that is, murder with malice, same being made so by virtue of Art. 1141, P. C., (1911 Revision), which article, however, has been repealed at this time.

In the case of Milo v. State, 127 S. W. 1025, 59 Tex. Cr. R. 196, by virtue of the statute, a murder committed by a person engaged in committing the offense of robbery, was murder in the first degree, or murder with express malice. Since the repeal of Art. 1141, P. C., (1911), we find further cases holding in effect that a killing committed while the accused was engaged in burglary or theft at nighttime is murder with malice. Among them is the recent case of Leza v. State, 195 S. W. (2d) 552, from which we quote as follows:

:

"We are of the opinion that the issue of aggravated assault was not raised by any evidence which would call for an instruction to the jury on the law relative thereto; nor are we of the opinion that the issue of murder without malice was raised by the evidence. Appellant had committed burglary of a private residence at night, which is a felony, and when he was apprehended by the owner of the house, he sought to escape, evade identification and prosecution. In his desperate attempt to accomplish that objective, he murdered the man who had caught him in the act. What fact or circumstance is there in the record that would mitigate or extenuate the offense for which he was on trial? None. Moreover, there is nothing in the record to indicate that the crime was committed by appellant while he was under the immediate influence of sudden passion arising from an adequate cause, etc. In the absence of any evidence which raises such issue, the court will not be required to give any instruction covering the law of murder without malice. See Franks v. State, 130 Tex. Cr. R. 577, 95 S. W. (2d) 128; Tebo v. State, 133 Tex. Cr. R. 61, 106 S. W. (2d) 712; Williams v. State, 120 Tex. Cr. R. 484, 48 S. W. (2d) 304."

Appellant further complains because the trial court failed to instruct the jury relative to an intent to kill, he asserting that the knife proven to be used by him was not per se a deadly weapon and therefore his intent to kill was not shown by the facts. We find appellant, soon after this killing, in possession of a spring-back knife which, by touching a button, would flip open, with a four-inch blade, and making the statement that a man "had cornered him and he gutted him." We also find Mr. Mears, who had been pursuing appellant, lying in the weeds with a wound in his groin about four inches deep from which wound he died after about four minutes.

Again, we said in Ammann v. State, 145 Tex. Cr. R. 34, as follows:

"The specific intent to kill is an essential element of the offense of assault with intent to murder. Art. 1160, P. C. Such intent may be inferred when the instrument used in committing the assault is a deadly weapon. If the weapon used is not deadly, the intent to kill on the part of the accused may be ascertained from and shown by the surrounding facts and circumstances. If it is possible that death might have been inflicted by the weapon used, and if the accused intended thereby to take life by the use made thereof, the offense of assault with intent to murder is complete, even though the instrument used

was not a deadly weapon. Branch's P. C., sec. 1636; Franklin v. State, 37 Tex. Cr. R. 113, 38 S. W. 802; Basquez v. State, 114 Tex. Cr. R. 602, 26 S. W. (2d) 206; Rose v. State, 123 Tex. Cr. R. 261, 58 S. W. (2d) 526."

In the present instance, we think the facts show an intent to kill not alone by the weapon used but also by the mode and manner of its use. Furthermore, the evidence from the appellant himself that "he gutted a man" would go to show that he had such intent at the time he did kill the deceased.

In one of the first cases in which the court was called upon to construe the present murder statute, (Miller v. State, 112 Tex. Cr. R. 125, 13 S. W. (2d) 865), and discussing the very question here involved of the necessity of a charge upon an intent to kill, we find this very significant language:

"There do exist cases, we think, in which it is not necessary to prove a specific intent to kill any further than is involved in the proof of certain facts, as the intentional infliction of serious bodily injury upon the person of another by the use of a weapon deadly per se, or a killing committed in the attempted perpetration of arson, burglary, etc. In such cases we can see no reason for giving the charge under discussion."

We are inclined to the view that where an accused is discovered in the act of committing a felony, and in resisting an attempted legal arrest by one in whose presence the offense is committed the accused inflicts serious bodily injury upon the person so attempting to make the arrest, the court is not required to instruct on the intent to kill where the injury inflicted results in death.

By proper bills of exception appellant complains of the action of the trial court in permitting the State in the development of its case in chief to prove, over his objection, by Mrs. Mears and other State witnesses after they had positively identified him on the trial as the man who ran from Kennedy's automobile on the night in question, to further testify that about a week after the commission of the offense, they saw him in jail and identified him. He objected to this testimony on the ground that it was irrelevant, immaterial and a conclusion of the witnesses. We think this testimony was admissible under the following authorities: Weaver v. State, 68 Tex. Cr. R. 219; Fortune v. State, 96 Tex. Cr. R. 569; Briscoe v. State, 106 Tex. Cr. R. 402; Hammond v. State, 123 Tex. Cr. R. 590.

Appellant cites us to the cases of Reddick v. State, 35 Tex. Cr. R. 463; Clark v. State, 39 Tex. Cr. R. 152; Bowen v. State, 47 Tex. Cr. R. 137; Ripley v. State, 51 Tex. Cr. R. 126; Murphy, alias Jones v. State, 41 Tex. Cr. R. 120; Turman. v. State, 50 Tex. Cr. R. 7. In all the cases cited by appellant, except in Murphy, alias Jones v. State, supra, the State proved by third parties that subsequent to the commission of the offense, the witnesses identified appellant while in· jail. This, of course, was hearsay and was not admissible. The Murphy, alias Jones case seems to be the only one which supports appellant's contention, but that case has been overruled by implication in the case herein cited by us.

By Bill of Exception No. 2 appellant complains of the admission in evidence of the testimony given by Mrs. Mears wherein she related to the jury in detail the time and place of service by the deceased while he was in the Armed Forces of the United States during the late war. This fact seems to have been first developed by appellant's attorney in showing by the State's witness Cook that the deceased was an ex-soldier, and Cook also being an ex-soldier, was possibly in sympathy with his ex-soldier friend. We think the evidence on the point from Mrs. Mears, if error, was not such as would call for a reversal of this case.

By proper bill of exceptions appellant complains of the testimony given by Kennedy as to what deceased said immediately after he received the fatal wound. This testimony was admissible as a part of the res gestae.

Finding no errors in the record, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant urges as grounds therefor the same matters relied upon for reversal upon original submission.

Because of the severe penalty inflicted we had given the record the closest scrutiny and the questions raised our most deliberate consideration before releasing our original opinion. Notwithstanding this we have again reviewed the record and the authorities relied upon by appellant. To write further would

only be a repetition, or the expression of the same conclusion in different words, which would add nothing to the jurisprudence of the State. Believing that the appeal was properly disposed of in our original opinion appellant's motion for rehearing is overruled.