**Ex parte Roscoe CHERRY.**

**No. 43223.**

Court of Criminal Appeals of Texas.

July 8, 1970.

**950**

James W. Lee III, Dallas, for appellant.

Henry Wade, Dist. Atty., John Tolle, and Harry Schultz, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

This is a habeas corpus proceeding instituted under the provisions of Article 11.07, Vernon's Ann.C.C.P., by an inmate of the Texas Department of Corrections, attacking as void the conviction under which he is confined.

After an evidentiary hearing in Criminal District Court No. 2 of Dallas County, Texas, the record was transmitted to this Court along with the trial court's findings of fact and conclusions of law.

Petitioner was found guilty in Cause No. C–67–5613–KI for the offense of robbery by assault enhanced under Article 62, Vernon's Ann.P.C., and his punishment assessed at life. The conviction was recently affirmed by this Court in Cherry v. State, 447 S.W.2d 154.

In his application for a post conviction writ of habeas corpus now before this Court the petitioner contends that the State withheld from the petitioner and his counsel material evidence which was within the knowledge of the attorneys for the State and which would have had a material effect upon the outcome of petitioner's case at the time of trial had such information been brought to the attention of the petitioner or his counsel.

Bobby French, the complaining witness in Cause No. C–67–5613–KI, was the only witness who identified the appellant as one of the four men who robbed him at his liquor store in Dallas on September 2, 1967, and who was in the store a period of three or four minutes. A customer, Pat Ivory Brashear, was unable to identify the appellant as is reflected in 447 S.W.2d 154, 156.

At the original trial on direct examination, French related he had never seen the appellant prior to the alleged offense and had not seen him until the date of the trial. He expressly stated he had not viewed "any kind of a lineup."

On cross-examination French denied he had told appellant's aunt that he could not identify his assailants but claimed he only told her he did not know them "by name." The record then reflects the following:

"Q. You did not tell her that you did not think you could identify them?

"A. No, I didn't.

"Q. Or maybe you could if you saw them?

"A. I said I could if I seen them, yes.

"Q. You thought you could if you saw them?

"A. Right.

"Q. All right, so your identification of this boy is here this morning?

"A. Right.

"Q. And when you did that when you came into the courtroom and you took the stand up there?

"A. Right.

"Q. And this would be the only time you have seen him since September 2nd, you say?

"A. Right."

The evidentiary hearing reflects that the petitioner Cherry was arrested on October 18, 1967, and while confined was placed in several lineups. Such hearing also reflects that on October 21, 1967, French, the complaining witness, identified the petitioner in a police lineup as one of the four men who robbed him. The transcription of the grand jury testimony reflects that French told the grand jury prior to indictment he had identified the petitioner in a lineup. The information that French had identified the petitioner at a lineup was also contained in a police case report. It appears that both the case report and grand jury transcript were available or known to the State.

Several members of the jury that convicted the petitioner testified at the evidentiary hearing on the writ of habeas corpus that in their deliberations on guilt there was some question concerning French's identification of the appellant and that the jury requested that the testimony of French concerning the identification be read back to them.

At the evidentiary hearing, French testified that he did not know whether his identification of the petitioner at the trial was based upon his seeing the petitioner during the robbery or upon his seeing him in the lineup.

French further testified that at the trial and before the grand jury he answered the questions to the best of his ability, and he did not deliberately falsify his answers.

Following the hearing on the application for writ of habeas corpus, Judge Charlie T. Davis found that there was material discrepancy between the testimony of the complaining witness, Bobby French, before the grand jury and at the trial upon the merits; the State's failure to make available said grand jury testimony deprived petitioner of evidence to which he was entitled; the failure of the State to make such evidence available was not the result of bad faith on the part of the attorney for the State; the petitioner was deprived of a valuable right to test the identification testimony of Bobby French to determine if the same was tainted by the lineup identification and that the petitioner's application should be granted.

In Means v. State, 429 S.W.2d 490, this Court said:

"The relatively recent development of the prosecutor's constitutional duty to disclose evidence favorable to the accused began in 1935 with Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L. Ed. 791, and has continued to develop. Certain guidelines and rules have emerged.

"Certainly, we now know, reversal must follow where the prosecutor deliberately presents a false picture of the facts by knowingly using perjured testimony. Miller v. Pate, 386 U.S. 1, 87 S. Ct. 785, 17 L.Ed.2d 690; Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.

"Reversal must also follow if the prosecutor presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that it was false. Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737; Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed.2d 1217; Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9.

"Further, we note that a conviction must be reversed if the prosecutor ac-

952

tively suppresses evidence which may exonerate the accused or be of material importance to the defense. Jackson v. Wainwright, 5 Cir., 390 F.2d 288; Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; United States ex rel. Almeida v. Baldi, 3 Cir., 195 F.2d 815, 33 A.L.R.2d 1407, Cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341; Curran v. State of Delaware, 3 Cir., 259 F.2d 707, Cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353. See Goldstein, 'The State and the Accused: Balance of Advantage in Criminal Procedure,' 69 Yale L.J. 1149 (1960).

"Reversible error is also committed where the prosecutor negligently or inadvertently fails to disclose evidence which may exonerate the accused or which may be of material importance to the defense, even though not offered as testimony at the trial and even though the accused's counsel is not diligent in his preparation for trial. United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135; Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287; United States v. Poole, 7 Cir., 379 F.2d 645; Barbee v. Warden, 4 Cir., 331 F.2d 842; Ashley v. State of Texas, 5 Cir., 319 F.2d 80, Cert. denied 375 U.S. 931, 84 S.Ct. 331, 11 L.Ed.2d 263; See also Thomas v. United States, 9 Cir., 343 F.2d 49; 'Disclosure of Prosecutor's Evidence—Disclosure of Favorable and Material Evidence Required Although Procurable by Diligent Defense Counsel,' 42 N.Y.U. Law Rev. 764; 'Prosecutor's Failure to Disclose Evidence Equally Available to the Defense May Constitute a Violation of Due Process,' 42 Notre Dame Lawyer 264.

"The standard applied in such cases has been whether the testimony 'may have had an effect on the outcome of the trial.' Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

"The development of the case law on this subject teaches that the good or bad faith of the prosecutor or the lack of diligence by the defense counsel or the lack of request for such information (particularly where defense counsel has no reason to suspect the existence of such evidence) are not the controlling factors they may have once been.

"In Barbee v. Warden, 4 Cir., 331 F.2d 842, it was said: 'In gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel.'

"In Jackson v. Wainwright, 390 F.2d 288, the Fifth Circuit Court of Appeals said:

"'In Brady v. State of Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 the Court made it clear that its primary interest was not to punish misconduct by the prosecutor, but to insure a fair trial to the defendant, and particularly to insure that the trial would bring out, not hide, the truth. Before Brady the Court seemed to have placed some weight on the willfullness of the prosecutor's action, but in Brady the Court said:

"' "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material [either] to guilt or to punishment, *irrespective of the good* [faith] *or bad* faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. (emphasis supplied).

"'In accord with Brady lower federal courts have emphasized the harm to the defendant rather than the prosecutor's motive in failing to disclose exculpatory evidence.'"

The trial court's findings are supported by the record. The application for writ of habeas corpus is granted, the conviction is set aside and the petitioner is ordered remanded to the custody of the Sheriff of Dallas County to answer the indictment in Cause No. C–67–5613–KI.

It is so ordered.