Frank LESTER and Kemal Shea, Appellants,

v.

The STATE of Texas, Appellee.

No. 45489.

Court of Criminal Appeals of Texas.

April 11, 1973.

Rehearing Denied Sept. 19, 1973.

Joseph Abraham and Anthony Aguilar, El Paso, for appellants.

Steve W. Simmons, Dist. Atty., and David R. Rosado, Asst. Dist. Atty., El Paso, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

These are appeals from convictions growing out of an assault with intent to murder indictment.

Appellant Shea was found guilty of assault with intent to murder without malice, and the jury assessed punishment at one and one-half years. Appellant Lester was found guilty of aggravated assault, and punishment was assessed by the jury at two years (jail) probated.

A review of the testimony is deemed necessary in order that appellants' contentions may be discussed with greater clarity.

Out of the presence of the jury, it was developed that a surveillance was established by El Paso narcotic officers on a duplex at 8802 Comet Street, El Paso, on September 8, 1970, as the result of a tip received by a United States Customs Officer that marihuana was going to be delivered to that address. Officers saw appellants make several trips from the duplex to their automobile. Officer Castro, who was watching with binoculars, one hundred feet from the scene, testified that he saw appellant Shea carrying "a plastic baggy with what appeared to be a piece of red paper on it" that the officer thought contained marihuana. When the appellants drove off in their automobile, Castro ordered Metro Squad Officers Timmons and Enriquez to follow appellants and stop them. Castro testified, without objection, that he gave such order because he felt that appellants possessed marihuana. The officers were driving an unmarked 1964 Chrysler automobile and were not in uniform. Enriquez' hair was down to his shoulders and Timmons was wearing a moustache. When the officers attempted to pull appellants' car over, numerous shots were exchanged between the officers and appellants followed by a chase until appellants pulled into a lighted gasoline station. The evidence as to who fired the first shot is in dispute. Gunfire continued until uniformed officers arrived.

Officer Timmons and appellant Lester were wounded. A search of appellants' car revealed two dead doves but no contraband of any kind was found.

Appellants Shea and Lester testified that they had been dove hunting and stopped at the duplex on Comet Street to give a friend some doves; that their friend had plenty of doves, but the other occupant in the duplex, a man by the name of Catoe, wanted them. Appellant Shea went to his car, picked up the birds and returned them to the duplex. He further testified that he had a plastic bag of cherry drop candy that he had taken on the hunting trip that day. According to appellants, the shooting began after a 1964 Chrysler pulled up alongside their car and someone yelled, "Pull over," and appellant Shea looked around and saw a long haired man holding a shotgun out of the window. Appellants denied seeing either of the men display a badge.

In appellants' first two contentions, it is urged that the court erred in finding that there was probable cause for their arrest.

Following the arrest of appellants, guns were taken from the appellants by the officers. They were admitted into evidence over objection by appellants that they were the fruits of an illegal search and seizure.

We find it unnecessary to pass upon the legality of the arrest since appellants

testified on direct examination that they had the guns in their possession. Having voluntarily taken the stand at the guilt stage and on direct examination admitted having an exchange of gunfire with the officers, appellants cannot question the lawfulness of the search where the guns were seized. See Sheridan v. State, Tex. Cr.App., 485 S.W.2d 920; Bradley v. State, Tex.Cr.App., 478 S.W.2d 527; Boothe v. State, Tex.Cr.App., 474 S.W.2d 219; Washington v. State, Tex.Cr.App., 484 S.W.2d 721.

Appellants contend the court erred in denying their request for the grand jury testimony of a witness.

■ Appellants' motion alleges that one Doug Stringfield was employed at the service station where the chase concluded, and that appellants believe that his testimony before the grand jury is favorable to them in that appellant Shea hollered to Stringfield, as they drove into the service station, to get down to avoid getting shot by the occupants of the black Chrysler and to call the police; that the said Doug Stringfield has moved to Missouri, and that appellants need his grand jury testimony in advance of trial so that they might know in what regard to exercise their constitutional right to process to secure the attendance of the witness. Appellant Shea testified in support of the motion that Stringfield had moved to Missouri, and that Stringfield had appeared before the grand jury at his request.

In Brown v. State, Tex.Cr.App., 475 S.W.2d 938, it was stated:

"Appellant next complains of the court's refusal to grant his 'Brady v. Maryland' motion for discovery and his subsequent motion for the production of the grand jury proceedings. This court is well aware of the holding in Brady v. Maryland [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215] (see i. e., Means v. State, Tex.Cr.App., 429 S.W.2d 490; Ex parte Cherry, Tex.Cr.App., 456 S.W.2d 949), but we fail to find any indication that material evidence that would have affected the determination of appellant's guilt or the punishment to be imposed was suppressed by the prosecution.

"An accused is not ordinarily entitled to the inspection of grand jury minutes or testimony for the purpose of ascertaining evidence in the prosecutor's hands or for the purpose of discovery in general, regardless of whether the request therefor is made before or during trial. Garcia v. State, Tex.Cr.App., 454 S.W.2d 400, 403, and cases there cited.

"The production of the grand jury testimony, of course, lies within the sound discretion of the trial court and the accused may be permitted to inspect such testimony where 'some special reason' exists or where a 'particularized need' is shown so as to outweigh the traditional policy of grand jury secrecy. Garcia v. State, supra; Smith v. State, Tex.Cr. App., 455 S.W.2d 748."

At the trial, Allen York testified that he and Stringfield were employed at the service station at the time in question when appellants pulled into their station, jumped out of the car and screamed, "Get down. These people are crazy. They're trying to shoot us." York further testified that appellants asked them to call the police. Appellant Shea's testimony as to what occurred when appellants drove into the service station was to the same effect as the testimony of the witness York. No testimony was offered which in any manner refuted the testimony of York or Shea regarding what was said or done at the service station at the time in question. Appellants' motion and testimony in support thereof does not suggest that Stringfield was in possession of any additional facts.

We conclude that the appellants did not demonstrate a "particularized need" for the grand jury testimony so as to show that the

trial court abused its discretion in refusing to order its production.

Appellants contend the court erred in admitting a bag of marihuana into evidence over objection that there was no evidence connecting appellants to same.

■ Officer Castro testified that on the morning following the shooting a plastic bag containing marihuana was found along the side of the road travelled by the vehicles during the chase. Castro further stated the bag had a red paper on it and that the bag was similar to the one he saw in appellant Shea's hand the night before, but could not say that it was the same one. The lack of positive identification of the bag of marihuana went to the weight rather than the admissibility of the evidence. Alejandro v. State, Tex.Cr.App., 394 S.W.2d 523; Futch v. State, Tex.Cr.App., 376 S.W.2d 758. See Alexander v. State, Tex.Cr.App., 476 S.W.2d 10.

Lastly, appellant contends that the court erred in allowing a witness to testify to "extraneous collateral matters."

■ Witness Catoe testified that he and appellant Shea smoked marihuana that Shea had brought with him to the duplex on the night in question, and that Shea "had a plastic baggy. I presume it was marihuana." Catoe further testified that he had known of Shea possessing marihuana on other occasions.

Prior to the complained of testimony by Catoe, appellant Shea had testified on direct examination as follows:

"Q Mr. Shea, did you have a package of marijuana on your person that night?

"A (returns to the stand) No, sir, I didn't.

"Q Have you ever had a package of marijuana on your person ever?

"A No, sir, I never have."

The door was opened to the testimony of Catoe that he had smoked marihuana with appellant on the night in question and had seen appellant in possession of marihuana on previous occasions, when appellant testified on direct examination that he had never had a package of marihuana on his person. The complained of testimony was admissible for impeachment. Barrera v. State, 491 S.W.2d 879 (Tex.Cr.App., 1973); Kohler v. State, 490 S.W.2d 592 (Tex.Cr.App., 1973); Davis v. State, Tex.Cr.App., 478 S.W.2d 958; Thomas v. State, Tex.Cr.App., 477 S.W.2d 881 (concurring opinion); Heartfield v. State, Tex.Cr.App., 470 S.W.2d 895.

The judgments are affirmed.

Opinion approved by the Court.

MORRISON, Judge (concurring).

I concur in the affirmance of this conviction, but because of the peculiar facts involved feel impelled to state my reasons.

The question of unlawful arrest is not in this case. Appellants did not testify that they thought they were being arrested and did not assert that they thought the persons pursuing and shooting them were officers.

This is not a narcotics case where contraband is found either on the person or in the accused's automobile. The officers did not need to search for the shotguns and the pistol because the evidence conclusively established the presence of such weapons in appellants' automobile.

Appellants readily admitted the possession and the firing of the guns. Such testimony was part of their defensive theory in this assault with intent to murder case.

The question in this case is not whether the officers were acting within the scope of their authority in making the arrest. The sole question presented by this record is whether or not appellants were acting within their right of self-defense against the

strangers who they thought were attacking them.

This issue was properly submitted and answered adversely to them by the jury.

I concur.

ODOM, Judge (dissenting).

The evidence shows that around midnight on September 7, 1970, narcotic officers, who were conducting a surveillance of a duplex in El Paso, observed appellants make several trips from the duplex to their automobile. They further observed appellant Shea carrying "a plastic baggy with what appeared to be a piece of red paper on it,"[1] and watched Shea place two shotguns in the back of the vehicle. The appellants then got in their automobile and drove away. Asked to describe appellant Shea's appearance, one of the surveilling officers stated:

". . . Mr. Shea was wearing a camouflage, that's green and brown fatigue type jacket with the sleeves partly rolled up. He was wearing blue levi's and some brown hunting boots."

He further stated that it appeared to him that the appellants had been hunting.

Two of the narcotic officers followed appellants' automobile in an unmarked, 1964 black Chrysler. Neither officer was in uniform. The record reflects that one of the officers was disguised as a "hippie," had hair down to his shoulders and wore a mustache.[2] The other officer was described as "straight looking" but was not in uniform. They began chasing appellants, pulled their unmarked car abreast of appellants' car, exhibited a shotgun and shouted for the appellants to pull over. (It

is disputed whether the two identified themselves as officers.) At this point, shots were exchanged and the testimony is in conflict as to who fired the first shot. The gunfire continued until uniformed officers arrived on the scene.

I cannot agree that this warrantless arrest or attempted arrest (the initial stop or attempted stop of the automobile) met the test of probable cause. E. g., Brown v. State, Tex.Cr.App., 481 S.W.2d 106. It is unlawful for an officer to arrest an individual or stop his car for the purpose of making an arrest where probable cause for such arrest does not exist; this is not doubted. And it is well established that a person has the right to use all force necessary to extricate himself from an illegal arrest. E. g., Cline v. State, 150 Tex.Cr.R. 586, 204 S.W.2d 512; Ely v. State, 139 Tex.Cr.R. 520, 141 S.W.2d 626; Grafft v. State, 134 Tex.Cr.R. 30, 113 S.W.2d 546; Montgomery v. State, 43 Tex.Cr.R. 304, 65 S.W. 537. Recently, in Forbau v. State, 492 S.W.2d 516, (Tex.Cr.App., 1973) we quoted the following from 6 Tex.Jur.2d, p. 194, Sec. 52:

"Although every citizen has a duty to submit to lawful arrest, he is not required to submit to an unauthorized or unlawful arrest.

"A person who is threatened with the commission of an offense that is classed as an 'offense against the person,' such as unlawful arrest or false imprisonment, has two remedies: he may choose to appeal to the law for redress by application for habeas corpus or other appropriate remedy, or he may resort to his right of resistance."

But for the lawless conduct of the narcotic officers, the circumstances out of

1. Appellant Shea testified that he had a plastic bag of cherry drop candy that he had taken with him on a dove hunt on the day in question. Dead doves were found in the automobile.

2. Officer Enriquez, describing his own appearance on the night in question, testified as follows: "A. Yes, sir. At that particular time I had I would say a little bit longer or quite a bit longer hair than I have now. At the time I had been doing some undercover work and had made some buys of narcotics and I had a mustache also * * * I was trying to fit the environment of a hippie."

which the alleged offense arose would not have occurred. I would hold the arrest to be illegal and reverse this case.

For the reasons stated, I respectfully dissent.

ROBERTS, J., joins in this dissent.

OPINION

ON APPELLANTS' MOTION FOR REHEARING

ONION, Presiding Judge.

In their motion for rehearing appellants vigorously urge the reconsideration of their first two grounds of error contending the court sidestepped the issue of probable cause for arrest in the majority opinion on original submission.

The real difficulty in this case lies in the fact that appellants contend there was no probable cause for their arrest, and that their convictions ought to be reversed as a matter of law for this reason alone. By their brief they call attention to the trial court's ruling on their motion to suppress heard before the trial on the merits.

They do not claim that incident to the arrest in question there was recovered evidence which was improperly admitted or that a confession was obtained, etc. It is really appellants' argument that when the officers who were not in uniform and who were in an unmarked car attempted their apprehension of the appellants their actions under the circumstances, and when the appellants did not know they were officers, brought about the events out of which the alleged offense arose and gave to the appellants the right of self-defense and infected and tainted the whole proceedings.

Upon a reconsideration of the record, this writer is convinced that Judge Morrison put his finger on the real issue in his concurring opinion on original submission when he wrote:

"The question in this case is not whether the officers were acting within the scope of their authority in making the arrest. The sole question presented by this record is whether or not appellants were acting within their right of self-defense against the strangers who they thought were attacking them.

"This issue was properly submitted and answered adversely to them by the jury."

The real issue concerns the appellants' right of self-defense,[1] and this goes to the heart of the sufficiency of the evidence to show an assault, for to use firearms defensively when attacked is not an assault under Texas law. White v. State, 29 Tex.App. 530, 16 S.W. 340 (1891).

The issue of self-defense was adequately presented to the jury in the court's charge at the guilt stage of the trial and decided adversely by the jury—the triers of the facts.[2]

Appellants' motion for rehearing is overruled.

---

1. It might be said that the real issue is the appellants' right to resist arrest, whether lawful or not (from a probable cause standpoint). However, the appellants did not testify that they knew the men pursuing them were officers and they were resisting an arrest in a manner to which they were entitled to resist but that they were being accosted by strangers in an unmarked car which was later shown to have an Arizona license. On appeal, no complaint is made concerning the failure of the court to charge on the right to resist arrest.

2. From this cold record this writer would have concluded if I had been the trier of the facts that appellants acted in self-defense, but I am not the trier of the facts and cannot substitute myself for jurors who actually saw and heard the witnesses.