C. A. DAWSON V. THE STATE.

No. 1110.   Decided May 26, 1897.

38   9
38   57

**1. Conspiracy to Commit Arson—Continuance.**

On a trial for conspiracy to commit arson, the object and purpose of the arson being to get the insurance money for which the personal goods and property stored in the house was insured, and defendant made application for a continuance for the testimony of his wife, who was sick and unable to attend as a witness, to prove that she stored the goods in the house, took an inventory of the same, knew their costs and value, and that they were worth $2500, and that they were insured for only $1000; Held, the evidence was material and the continuance should have been granted, since defendant was not conversant with the articles and their value, and had no list nor inventory of the same. And, whether he could have proven the same facts or not by himself, he had the right to have his wife present and to make this proof by her.

**2. Conspiracy—Venue of the Prosecution—Jurisdiction—Evidence.**

Under provision of Code of Criminal Procedure, article 242, "the offense of conspiracy may be prosecuted in the county where the conspiracy was entered into, or in the county where the same was agreed to be executed." Held, where a conspiracy to commit arson in M. County was entered into in D. County, the venue of the prosecution and the jurisdiction were properly alleged in M. County; and it was also proper to allege that the conspiracy was in M. County. And, under such allegations, proof

was admissible as to what transpired in connection with the formation and plans for its execution entered into in D. County.

**3. Same—Acts and Declarations of a Co-Conspirator.**

The acts and declarations of a co-conspirator, in the absence of defendant and after the final consummation of the conspiracy, are purely hearsay and inadmissible against defendant.

**4. Same—Evidence—Letter of Co-Conspirator Addressed to Defendant.**

On a trial for conspiracy to commit arson, a letter apparently written and signed by a co-conspirator after the consummation of the conspiracy, and addressed to defendant, but which had never been delivered to or received by defendant, was wholly inadmissible as evidence against him.

APPEAL from the District Court of Milam. Tried below before Hon. W. G. TALIAFERRO.

Appeal from a conviction for conspiracy to commit arson; penalty, two years imprisonment in the penitentiary.

The facts of the case are made sufficiently apparent by the opinion.

[No briefs for either party have come to the hands of the Reporter.]

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of conspiracy to commit arson, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

The principal witness in the case against appellant was L. F. Saucer, a confessed accomplice. He testified to a positive agreement between defendant (C. A. Dawson), himself, W. R. Clark, and John Thomas, made and entered into at Lancaster, in Dallas County, about the 17th day of October, 1895, to burn a house situated in Cameron, Milam County. Appellant had stored in said house a lot of household goods, including a piano, which were insured; and he proposed to employ the others to burn the house for him, for which he was to pay them $100. It seems that, about the 26th of October, Clark, Saucer, and Thomas were in Dallas. Clark and Thomas had previously agreed to go to Cameron and burn the house. Clark, however, insisted that Thomas should go to Cameron by himself, and burn the house. Thomas refused to go alone, but said he would get a man from Sherman, by the name of Smith, to go with him and aid him in carrying out the plan of the conspirators. Smith came that night, on receipt of a telegram from one of the parties, and at Dallas entered into the conspiracy; and Smith and Thomas, according to the testimony of Saucer, left Dallas on the morning of the 27th of October, on the Santa Fe train, for Cameron. The proof showed that the house in Cameron was destroyed by fire on that Sunday night, about 12 o'clock. There are some circumstances tending to corroborate the accomplice, which will be alluded to later on.

Appellant made an application for a continuance on account of the absence of Mrs. John Whaley, Charles Lebo, J. J. Harris, E. F. Ford, all

of Dallas County, and Mrs. C. A. Dawson, of Van Zandt County. The application shows diligence as to all of these witnesses, but there is no showing as to what Mrs. Whaley or Charles Lebo would testify to, so they may be eliminated. The officer's return showed that the witnesses George Price, J. J. Harris, and E. F. Ford were in custody at Dallas, but the nature of their custody is not shown. The State, however, undertook to have said witnesses present at the trial, and George Price was present, but the others are not shown to have been present. The evidence of J. J. Harris and E. F. Ford is not shown to be material. The record shows that Mrs. C. A. Dawson was sick, and could not be brought to court. Appellant "desired her testimony for the purpose of proving a list of the goods in the house burned; that she stored said goods in the house herself, and took an inventory of all the articles; that she is acquainted with the value and cost of all the articles stored in said house, and will testify that they were worth more than $2500, and that they were insured for only $1000." In view of the fact that the only motive assigned to the defendant for the conspiracy to burn said property was for the purpose of defrauding the insurance company, it would appear that her testimony was material. Defendant himself shows that he was not conversant with all the articles stored, and that he had no list or inventory of said articles; that his wife alone had said list. Whether the defendant could prove the same facts by himself or not, he had a right to have his wife present, and to make this proof by her. The application, however, shows that he was not conversant with the articles and their value, and she was. Under the circumstances of this case, we can not but regard her testimony as material, and the court should have granted the continuance on account of her unavoidable absence.

Defendant objected to all testimony of the conspiracy in Dallas because the indictment alleged said conspiracy was in Milam County. Code Crim. Proc. 1895, art. 242, gives jurisdiction of conspiracies to the county where the conspiracy was entered into, or in the county where the same was agreed to be executed. In this case, while the proof showed that the conspiracy was entred into in Dallas County, it was to be executed in Milam County. This county had jurisdiction, and it was not necessary to allege that the conspiracy was formed in Milam County. Under a similar statute authorizing the prosecution for theft either where the theft was committed, or through or into which the property may have been taken by the thief, where the prosecution is in the county into which the property is carried, it has been held sufficient merely to allege the theft in the county of the prosecution. And we can see no difference in principle between such a case and the question now before us.

After proving the terms of the conspiracy by the witness Saucer as made and entered into at Lancaster, in Dallas County, and after proving that the house was burned on Sunday night, the 27th of October, the State proved by the witness Saucer: "That he was in Dallas on Mon-

day, the 28th of October. That he met Clark and Thomas on the street, and Thomas then told him that he and Charley Smith had burned the house of H. H. Nesbitt, in Cameron, Texas. That Thomas said it was the slickest job he ever saw; that they broke out one of the panes of glass, and took down the stick that ran from the top of the window frame to the top of the sash, and hoisted the window and got into the house; that after they got in they found a two-gallon can of gasoline, and that they poured it over the things, and lit a match and stuck to it, and that it blazed up so quick that they like to have not gotten out of the house, and that he (Thomas) lost his watch in getting out the window; that he and Smith would have gotten back last night if the train had not been late; that Smith did not stop in Dallas, but went straight through to Sherman."

Appellant objected to this testimony because it was hearsay, and further, if there was any conspiracy entered into between the parties to burn Nesbitt's house, that said house had then been burned, and said conspiracy was at an end before said conversation was had, and that the declarations of Thomas made after the conspiracy was ended, not in defendant's presence, could not be used against him. The court overruled all these objections and admitted the testimony. Unquestionably, for the witness Saucer to state what the said Thomas told him, aside from any conspiracy, was purely hearsay; and, if it was admissible at all against defendant in his absence, it was only admissible as an act or declaration of a co-conspirator pending the conspiracy. The bill of exceptions shows, and the whole record shows, that the object and purpose of the conspiracy, to wit, the burning of the house, at the time of the conversation complained of, had been accomplished. The house had been burned, and all that the conspirators agreed to do was at an end, and the statements of the said Thomas were a mere narrative of past events. On no rule or principle of law was this testimony admissible against the defendant. It was material, and its effect could not prove otherwise than hurtful to defendant. Saucer had testified that defendant had told Clark and Thomas how they were to enter the house (that is, through the window, as this narrative of Thomas indicates that they did enter), and the jury were apt to regard this as a corroboration of Saucer. And, moreover, it is testimony of a hearsay character, showing that the house was actually burned by one of the conspirators, and in pursuance of the plan of the conspiracy. We can conceive of no evidence that would be more damaging to appellant, in its effect, than this was; and being purely hearsay testimony, inadmissible under any rule of evidence, it was error for the court to allow the same to be introduced.

On the trial, one Bob Wight, a State's witness, testified: That a few days after the Nesbitt house was burned he saw the defendant in Cameron, and defendant told him that a letter would come to the postoffice at Cameron; that the letter would be from W. R. Clark, addressed to Daniel Graham, in care of Bob Wight; that said letter would be intended for the defendant, and asked witness to get the letter out of the post-

office and give it to him. That in a few days thereafter a letter came, addressed to the care of witness as above indicated; that he received it through the postoffice, and gave it to the defendant. The State, in connection with this testimony, proposed to prove that some time after this letter was delivered to the defendant, and after the defendant had been arrested and taken to Dallas, a letter came, directed to Daniel Graham, in care of witness; that witness opened said letter and read it. This letter was produced in court, and identified by the witness as the same letter he had received. The letter and the envelope were introduced in evidence before the jury; the envelope being addressed to "Daniel Graham, care Bob Wight, Cameron, Texas." The letter is as follows:

"ARKANSAS CITY, Mo., 11/24/95.

"*Mr. C. A. Dawson:* I wrote you a letter last Wednesday and give it to Mr. P. to forward it to you, asking you to please do what you could for us at once. I am here broke, weather very bad, sleet and snow all over the face of the earth. You can imagine my condition in a strange land among strangers without a cent. If you have not sent the balance to Mr. P. please send it to undersigned at your earliest possible moment, if you have, it is all O. K., but by you sending it to me direct I will receive it earlier. Please do not disclose my whereabouts, will keep you posted as to where to direct your letters, if you have any news write me. Your friend, "WILL ROBERTS.

"(Over) Will Roberts, Genl—Del—Kansas City, Mo,

"Tare this up as soon as you receive it and write at once.

"W. R. CLARK.

"If you have sent money to Mr. P. and could spare the loan of a few dollars for a few days it would be highly appreciated and I will return it as soon as I can get straightened out. Will write you a long letter in a few days, would write more now, but am in a hurry to get this off on the first train. I wrote you the turn that things had taken. I have settled up everything concerning your matter and everything comes to me. "C."

Appellant objected to the introduction of said letter because it was in the nature of hearsay testimony, and because it was a declaration made by W. R. Clark, not made in the presence of the defendant; the W. R. Clark being alleged to be one of the conspirators, and after H. H. Nesbitt's house had been burned, which is alleged to be the object of the conspiracy. As above stated, the court overruled the objection and admitted the testimony. The admission of this testimony presents to our minds a rather difficult question. It has been held that a letter which a defendant took from the postoffice, but had never opened and read, though found on his person at the time of his arrest, can not be introduced in evidence against him. See Com. v. Edgerly, 10 Allen, 184. It was said in that case: "An unanswered letter is not admissible, although the statements contained in it are well known to the party to whom it

is sent. And this is held on the ground that a letter written to a party by a third person, to which no reply is made, does not show an acquies-- cence in the facts stated in the letter." Now, in this case the letter in question was not even received by the appellant. It, however, was ad- dressed exactly as he had informed Wight that the previous letter which he was looking for and received through Wight would be addressed to. him, and it was signed by the same name which he told Wight the pre- vious letter would be written by; but said letter was not received by him, nor is there any evidence that he ever saw its contents prior to its in- troduction in evidence against him. It was a letter written by a third party subsequent to the accomplishment of the conspiracy, although it bore the name of one of the conspirators. Outside of this, there was no proof of his identity as one of the co-conspirators. There was no proof of the handwriting of this letter—that it was in the handwriting of Clark, or any of defendant's co-conspirators. We do not believe, under the circumstances of this case, that it was admissible against defendant. As we have seen, the declarations of Clark, if he be one of the conspira-- tors, were not admissible against defendant after the culmination of the conspiracy; and on the same principle a letter written by one of the co- conspirators to the defendant would not be admissible unless in that connection it was further shown that the defendant received the same, and in some way acted upon the letter or responded thereto. Now, if this had been the letter that he told Wight he was expecting, there might. be some plausibility for its admission, though appellant in fact had not seen the contents of that letter. We think, however, that even under such circumstances its admission would be doubtful. Of course, appel- lant, when he took the stand, stated that Clark wrote said letter, and then attempted to explain the contents of said letter, but this did not render said letter admissible. It was admitted over his objections, and he was then driven to make the best shift he could to explain its con- tents. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*