Darvis Monroe MEADOWES, Appellant,

v.

The STATE of Texas, Appellee.

No. 35789.

Court of Criminal Appeals of Texas.

May 15, 1963.

Rehearing Denied June 19, 1963.

Aynesworth & Mann, by Kenneth H. Aynesworth, Jr., King C. Haynie (on appeal only), Houston, for appellant.

Frank Briscoe, Dist. Atty., Gus J. Zgourides and Gene D. Miles, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is under Art. 726d, V.A. P.C., for the unlawful possession of amphetamine; the punishment, one year in jail and a fine of $1,000.

Officer J. J. Strickland of the Houston police department, narcotics division, testified that on the day in question he drove to the 4300-block of Washington Avenue in company with his partner, Officer Jack Farrar, and a man by the name of James Frost. When they stopped, Frost got out of the car and went to a telephone booth in which appellant was standing. After the two engaged in a conversation, Frost returned to the car with appellant. When appellant got in the car and was introduced to Officers Strickland and Farrar, he asked: " 'What's the holdup? * * * I have got the bennies. Where is the money?' " Strickland replied: " 'I got the money but I am going to have to see the bennies first.' " Strickland and appellant then went to the telephone booth, where the latter reached in, got a paper sack, and handed it to Strickland, saying " 'Here they are.' " They then returned to the car, at which time Officer Strickland signalled to certain officers who had them under surveillance and who came to the car and placed appellant under arrest.

Officer Strickland then drove two blocks to Thompson Street and stopped beside a Cadillac automobile belonging to appellant. Appellant, at such time, opened the trunk of the Cadillac and removed a suitcase which was found to contain four plastic bags containing some pills. The brown sack and its contents, which appellant handed to Officer Strickland, together with the four plastic bags taken from the suitcase, were delivered to the city chemist for examination.

An examination and analysis by the chemist disclosed that the sack contained 20,300 five-milligram amphetamine tablets and the four plastic bags contained 500 eight-milligram and 2,700 ten-milligram amphetamine tablets.

After his arrest, appellant was taken to the police department, where he made and signed a written confession to Officer Strickland in which he admitted his possession of the amphetamine tablets. The statement was introduced in evidence by the state.

Testifying as a witness in his own behalf, appellant stated that on the occasion in question he was to deliver a package for his friend, R. L. Strickland, and be paid $10 for the delivery. Appellant testified that it was Strickland who placed the package in the telephone booth and that it was Officer J. J. Strickland who removed it from the booth. Appellant denied any knowledge of the four packages in the trunk of his car, stating that he did not know what was in the packages but that he was told they contained "Slim Time" pills, which were pills used for reducing and to stay awake.

Appellant also repudiated his confession and testified that he was not given the statutory warning by Officer Strickland or by anyone else. He also swore that he gave the confession because of pain he was suffering from a stomach ulcer, which he stated was aggravated by a police officer striking him in the stomach at the scene of the arrest.

Appellant's testimony with reference to mistreatment by the officer was controverted by Officer Scholl, upon his being called by the state in rebuttal. Officer Strickland also testified that he gave appellant the legal warning before he made and signed the statement introduced in evidence.

We find the evidence sufficient to support the jury's verdict, and shall discuss the contentions urged by appellant as grounds for the reversal of the judgment of conviction.

Appellant first contends, as was urged in his motion to quash, that the information is fatally defective because it failed to allege that the amphetamine was not a preparation for use in the nose and unfit for internal use.

The information charged that appellant did "unlawfully possess a dangerous drug, to-wit, amphetamine * * *."

Art. 726d, Sec. 2(a), V.A.P.C., in defining the term "'dangerous drug,'" includes, among other drugs or preparations, the following:

"(2) Amphetamine, desoxyephedrine, or compounds or mixtures thereof, except preparations for use in the nose and unfit for internal use."

Sec. 12 of Art. 726d, supra, provides:

"In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provisions of this Act, it shall not be necessary to negative any exception, excuse, proviso, or exemption contained in this Act, and the burden of proof of any such exception, excuse, proviso, or exemption shall be upon the defendant."

In Browning v. State, 161 Tex.Cr.R. 273, 276, 276 S.W.2d 522, we held that under a similar provision of Art. 726c, V.A.P.C. (now repealed) it was unnecessary to negative certain exceptions in the statute in charging the offense of unlawful delivery of barbiturates. See, also, McKnight v. State, 161 Tex.Cr.R. 472, 278 S.W.2d 150, and King v. State, 166 Tex.Cr.R. 231, 312 S.W.2d 501.

Under the provisions of Sec. 2(a) (2) of the present statute, amphetamine is, as hereinabove shown, a dangerous drug, the possession of which is made unlawful under Sec. 3(d) unless obtained under certain other specific provisions of the act.

We are unable to agree that the exception in the statute with reference to preparations for use in the nose and unfit for internal use is a necessary part of the definition of the offense or descriptive thereof or essential to its definition so as to require that it be negatived in charging the offense.

The court instructed the jury in his charge that amphetamine is a dangerous drug and that, under the statute, when a dangerous drug is illegally possessed by a person he will be punished, as provided therein.

■ The court then instructed the jury that if they believed from the evidence beyond a reasonable doubt that appellant did on the date alleged "unlawfully possess amphetamine" to find him guilty. The jury was further instructed that if it found from the evidence or had a reasonable doubt thereof, that appellant received the amphetamine from another person and did not know the contents of the containers, to acquit him.

Appellant urges error in the charge because it did not define the term "unlawfully possess," as used therein. In his objection appellant urged that it was a technical term which the court should define. Such term, in our opinion, is not a technical one which the court was required to define. No request was made by appellant that the court define the term "possess" or "possession." If such request had been made, the terms should have been defined.

The court's charge adequately instructed the jury as to the offense charged. No exception in the statute was invoked by appellant which required an instruction thereon. Appellant's defense as to his lack of knowledge of the contents of the containers involved in the transaction was submitted to the jury in the charge.

■ Appellant objected to that portion of the charge which submitted to the jury the question of whether he was duly and legally warned before making the written statement on the ground that it "does not contain the essential element of the defendant having been given the proper legal warning by the person to whom the statement was made."

The court instructed the jury that they could not consider the statement offered in evidence unless they believed from the evidence beyond a reasonable doubt that before

making the statement appellant was warned by Officer J. J. Strickland. The state's proof shows that Officer Strickland gave appellant the warning and questioned him and that Officer Scholl reduced the statement to writing.

In Sutton v. State, 166 Tex.Cr.R. 580, 317 S.W.2d 58, it was held that there was no irregularity in a confession where one officer gave the warning and questioned the accused and another officer who was present reduced the confession to writing. See, also, Brionez v. State, 168 Tex.Cr.R. 9, 323 S.W.2d 459. We find no error in the charge.

■ Appellant next complains that the court erred in permitting Chemist McDonald to testify as to the results of the analysis made by Chemist Metz under his supervision, over the objection that such was hearsay.

In Jackson v. State, 159 Tex.Cr.R. 228, 262 S.W.2d 499, a similar contention was overruled, in holding that a doctor under whose supervision a laboratory analysis was made by another could testify as to the result from the laboratory records.

We further observe that in the instant case Chemist McDonald not only testified from the records made by Chemist Metz but also testified from results of an analysis which he, himself, had run upon the amphetamine tablets.

■ Appellant next complains of the court's ruling in permitting Officer Scholl to testify that on the night of his arrest appellant told him that, some ten days before, he had sold 2,000 pills to the man by the name of Jim for $20 a thousand—which was the price he paid for them, over appellant's objection that such constituted evidence of an extraneous offense. The record reflects that appellant testified without objection that some ten days before his arrest he had delivered a large quantity of pills to the man named Jim. In view of this similar testimony, admitted without objection, no reversible error is presented. Crocker v. State, Tex.Cr.App., 336 S.W.2d 171.

Appellant's remaining complaint is to certain jury argument of state's counsel.

■ In the state's opening argument, Prosecutor White stated:

"There is not room enough in the Statute if you just gave a day for each pill, 23,000. One thing that has kept our jury—that the Americans have loved their jury system about is because you are the kings on the throne. Now you can do something for your community."

Appellant objected to counsel's statement with reference to the jury doing something for the community, on the ground that such was improper and prejudicial, which objection was by the court overruled.

We construe such argument as nothing more than a plea to the jury by the prosecutor for law enforcement, which he has the right to make. Urteago v. State, Tex. Cr.App., 333 S.W.2d 133.

■ In his jury argument, appellant's counsel stated:

"We haven't heard from Mr. Frost on this thing. We certainly couldn't use him, couldn't try. I think the State could have very handily if they had wanted to, but we didn't get to hear from him."

Thereafter, in his closing argument, Prosecutor Miles stated:

" * * * I didn't want to talk about Jim Frost. Mr. Aynesworth asked where he is, why we didn't bring him in here. He invited me to tell you about Frost.

"I will tell you, he is doing two years in jail and this was his supplier."

Appellant objected to the remarks of state's counsel—first, on the ground that it was outside the record, and, second, on the ground that appellant's counsel had not asked where Jim Frost was but had mentioned that he was not present.

While state's counsel should not have told the jury that Frost was in jail for two years, such statement appears to have been invited by the remarks of appellant's counsel and does not present reversible error. See: 42 Tex.Jur., Trial—Criminal Cases, Sec. 285, page 361; Welburn v. State, 129 Tex.Cr.R. 323, 87 S.W.2d 259. The statement by counsel that appellant was Frost's "supplier" also appears to be a reasonable deduction from the evidence.

The judgment is affirmed.

Opinion approved by the court.