Paul Ray THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 50941.

Court of Criminal Appeals of Texas.

March 10, 1976.

State's Motion for Rehearing Denied
Oct. 18, 1978.

Roy B. Johnson, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Gary Love and Jay Ethington, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

This is an appeal from an order revoking probation.

Appellant was convicted of possession of marihuana on May 30, 1973, and his punishment was assessed at two years probated.

A motion to revoke probation was filed on January 17, 1975, alleging, among other things, that appellant had on January 11, 1975, possessed a controlled substance, to-wit: biphetamine.[1]

■ Appellant's first contention is that the search of his automobile which resulted in the finding of the biphetamine capsules was without probable cause and we agree.[2]

The record reflects that Dallas Police Officer Worth saw a 1974 Datsun automobile make a left turn at the intersection of Canada Drive and North Hampton Road where only a right turn is permitted. Worth and his partner, Officer Harrell, proceeded to stop the Datsun. The appellant was the driver and had no driver's license. The appellant was placed in the back seat of the patrol car while Officer Harrell sat in the front seat. At ·this point Officer

1. The evidence showed that biphetamine was a pharmaceutical trade name for amphetamine, a controlled substance.

2. Appellant's testimony did not waive any objections to the legality of the search. Appellant testified that the coat containing the pills was not his, that it belonged to Sherry Rose, and that he was returning it to her. Sherry Rose testified the pills were hers and had been prescribed for her the day before the alleged offense and she had left them in appellant's car. It is clear this testimony was offered to meet, destroy, and explain after the fruits of the claimed illegal search were admitted. See *Nicholas v. State*, Tex.Cr.App., 502 S.W.2d 169 (Opinion on State's Motion for Rehearing); *Alvarez v. State*, Tex.Cr.App., 511 S.W.2d 493 (Opinion on State's Second Motion for Rehearing).

Worth returned to appellant's car and looked through the window at some objects lying on the right front bucket seat. He was able to see large medical bottles with prescriptions on them. He opened the door and examined one bottle and found it to be cough medicine. He noted that an empty bottle had a prescription from Ft. Leonard Wood, Missouri. He then picked up a coat lying in the seat and in one of the pockets he found a bottle containing biphetamine pills. The possession of these pills is the basis for this revocation.

The appellant did not consent to the search. Appellant was clearly not in a position to leave or lunge for any weapon or to seize and destroy any evidence.

We have concluded that the trial court was in error in finding that the officers had probable cause to enter the automobile. They had no prior information about the appellant or his automobile. See *Rushing v. State*, Tex.Cr.App., 500 S.W.2d 667. The stop was for a traffic offense, and the appellant made no furtive gestures. See *Wilson v. State*, Tex.Cr.App., 511 S.W.2d 531. Cf. *Borner v. State*, Tex.Cr. App., 521 S.W.2d 852. The facts and circumstances within the officer's knowledge at the time of the initial stop and prior to the search of the automobile would not warrant the belief that the appellant had committed or was committing a crime other than the traffic offense. See *Frazer v. State*, Tex.Cr.App., 508 S.W.2d 362 (Opinion on Appellant's Motion for Rehearing).

The search of appellant's automobile was not a search incident to arrest. Worth testified that appellant was being detained while a traffic ticket was being written and was not placed under arrest until after the pills were found. Cf. *Wussow v. State*, Tex.Cr.App., 507 S.W.2d 792. Appellant was not in custody at the time of the search, and thus the search was not incident to arrest for the traffic violation. Cf. *U. S. v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427.

The seizure of the pills cannot be upheld under the plain view doctrine. Prescription drugs are not inherently contraband, stolen goods or objects dangerous in themselves. See *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Cf. *Hernandez v. State*, Tex.Cr. App., 523 S.W.2d 410. The mere viewing of bottles with drugstore labels on them did not authorize the officers to enter the automobile and search the jacket or seize the pills.

Having so concluded, we find that the trial court abused its discretion in revoking probation.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge (dissenting).

The majority reverses the conviction on the grounds that the search was illegal even though appellant took the stand and admitted that he possessed the biphetamine.

When a defendant testifies that he possessed the contraband, he waives any contention concerning the legality of the search. *Stein v. State*, 514 S.W.2d 927 (Tex.Cr.App.1974); *Sims v. State*, 502 S.W.2d 730 (Tex.Cr.App.1973); *Hunnicutt v. State*, 500 S.W.2d 806 (Tex.Cr.App.1973); *Creel v. State*, 493 S.W.2d 814 (Tex.Cr.App. 1973); *Moulton v. State*, 486 S.W.2d 334 (Tex.Cr.App.1972), and *Palmer v. State*, 475 S.W.2d 797 (Tex.Cr.App.1972). It is difficult, if not impossible, from this and previous cases to determine when the rule applies. Rules should be applied consistently and with clarity.

Sherry Laverne Rose, a witness called by appellant, testified that the pills which had been introduced were prescribed for her the night in question. She had been in the car with appellant and they had apparently fallen out of her purse because it had a loose clip. There is other proof by the appellant that the pills were in the car.

In addition to not applying the rule that when a defendant testifies to possessing the contraband he waives the contention that a search is illegal, the majority holds that an arrest is not an arrest contrary to the statutes. The arresting officer, Robert J.

Worth, testified that appellant was driving a car and made an improper turn to the left where only a right turn was authorized. Officer Worth asked appellant for his driver's license but he did not have one. The officers then took him to the patrol car. The Legislature provides that this is an arrest.

Article 15.22, V.A.C.C.P., provides:

"A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."

Was appellant under arrest? Even though the officer stated that appellant was not under arrest when he was in the patrol car, he stated that appellant was not free to leave at any time after he was stopped. Courts are not bound by legal conclusions of others when facts do not support such conclusions.

The drugs were found in appellant's coat pocket which was on the seat of the passenger side of the car. Officer Worth testified as follows when asked why the coat was searched:

"Q. (Mr. Ethington): Why did you search the coat that you gave to Thomas here before you let him put it on?

"A. We always search prisoner's clothing to the extent that we determine if there are weapons or contraband inside that article of clothing. I wouldn't give a man his coat without going through the pockets to make sure there wasn't anything in there that shouldn't have been.

"Q. It's for your own personal safety then I take it that you're saying you searched the coat, is that correct?

"A. Yes, sir.

"Q. Before you gave it to the Defendant?

"A. Yes, sir."

The holding that appellant was stopped and was in the patrol car and not free to leave was not a restraint or arrest has

about as much reasoning or logic as a majority of this Court's opinion that five years' probation was more punishment than three years in the penitentiary. See *Lechuga v. State*, Tex.Cr.App., 532 S.W.2d 581 (1975).

If the appellant had made an incriminating statement after he was stopped and not free to leave, would the majority hold the statement admissible on the grounds that he was not under arrest? Under past decisions the answer would be no.

The Supreme Court of the United States held in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), that Robinson, who was stopped for driving while his license was suspended, was under arrest and that a subsequent search was proper. In *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), the officers stopped an automobile. The Supreme Court of the United States wrote:

" . . . When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete. . . "

The Uniform Act Regulating Traffic on Highways, Article 6701d, Section 153, V.A. C.S., provides:

"Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act."

Section 148(a) of the same Article provides:

"Whenever a person is arrested for any violation of this Act punishable as a misdemeanor, and such person is not immediately taken before a magistrate as hereinbefore required, the arresting officer shall prepare in duplicate written notice to appear in court containing the name and address of such person, the license number of his vehicle, if any, the offense charged, and the time and place when and where such person shall appear in court. Provided, however, that the offense of speeding shall be the only offense making mandatory the issuance of a written notice to appear in court; and only then if the *arrested person* gives his

written promise to appear in court, by signing in duplicate the written notice prepared by the arresting officer; and provided further, that it shall not be mandatory for an officer to give a written notice to appear in court to any person arrested for the offense of speeding when such person is operating a vehicle licensed in a state or country other than the State of Texas or who is a resident of a state or country other than the State of Texas." (Emphasis supplied)

In *Borner v. State*, 521 S.W.2d 852 (Tex. Cr.App.1975), this Court held that one stopped for speeding was arrested.

Since the proof shows that the appellant was violating Article 6701d, supra, the officers had a right to arrest and taken appellant into custody as authorized by Section 153 of the Act. In *Wallace v. State*, 467 S.W.2d 608 (Tex.Cr.App.1971), this Court wrote:

" . . . it is well settled that when an officer sees a person violating a traffic law, he is authorized to stop him and incident to that arrest to search his person. *Ciulla v. State*, 434 S.W.2d 948 (Tex. Civ.App.) . . . ."

The arrest of the appellant being legal, the question now turns to the search of the coat in the car. Does an officer, after making an arrest for a traffic violation, have the right to search that part of a car where the arrested person might readily reach a gun if he is permitted to re-enter?

If an officer stops and arrests the driver of a car for a traffic violation, he has a right to search the driver and take any weapon that the driver might reach. If the driver is seated in the car, a search for any weapon that might be readily obtained would be permissible under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

An officer making a traffic arrest is using good judgment to have a driver who has been stopped or arrested for a traffic offense get out of the car as a safety precaution. See *Grego v. State*, 456 S.W.2d 123 (Tex.Cr.App.1970). If an officer decides not to take a traffic violator before a mag-

istrate or to jail, the offender will get back into the car and it is quite possible that a weapon could be reached and the officer could be shot.

Our Legislature has provided for such arrests and the Supreme Court of the United States has upheld arrests and searches for traffic violations with good reason. A fugitive from a murder, robbery or any other crime who might not want an officer to check to see if he is wanted for some offense could obtain a gun after returning to his car and attempt to shoot the officer who had stopped him.

In the case of *People v. Cannon*, First Dist. 1974, 18 Ill.App.3d 781, 310 N.E.2d 673, a car was stopped because the brake lights were out. When the driver could not produce a license, the officer asked him to get out of the car. Passengers were also asked to get out of the car. After searching Cannon, the officer found a .38 caliber pistol under the seat. Another pistol was found in the search. The Illinois Court cited *Chimel v. California*, supra, in upholding the search of the automobile by the officer after the traffic arrest and wrote:

" . . . it then became the right and duty of the officer to make at least a cursory search of the immediate vicinity of the driver's seat. In our opinion, this type of search was not only authorized by law but it was essential to insure the safety of the arresting officer."

In *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, Mr. Justice Black, speaking for the Supreme Court, wrote:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer . . . ."

See *Corbitt v. State*, 445 S.W.2d 184 (Tex. Cr.App.1969), and *Taylor v. State*, 421 S.W.2d 403 (Tex.Cr.App.1967). *Agnello v. United States*, 269 U.S. 20, 29, 46 S.Ct. 4, 5, 70 L.Ed. 145, 148.

In *Lane v. State*, 424 S.W.2d 925 (Tex.Cr. App.1967), cert. denied, 392 U.S. 929, 88

S.Ct. 2270, 20 L.Ed.2d 1387, the arrest was for a speeding violation. The conviction was for the possession of a pistol found in the glove compartment at the time of the arrest. This Court held the search to be reasonable noting that the search was not based on probable cause but a search incident to a lawful arrest, citing *Hardin v. State,* 387 S.W.2d 60 (Tex.Cr.App.1965).

In *Sutton v. State,* 157 Tex.Cr.R. 216, 247 S.W.2d 894, this Court wrote:

"There can be no claim that appellant was illegally arrested. The evidence is without dispute that the search was made after the arrest. It is a settled rule that a search warrant is not necessary in order to search the person of one under lawful arrest. 38 Tex.Jur., p. 73; *Tones v. State,* 48 Tex.Cr.R. 363, 88 S.W. 217, 1 L.R.A., N.S., 1024, 122 Am.St.Rep. 759, 13 Ann.Cas. 455. Having a right to arrest and search appellant, he also had a right to search the car. *Stokes v. State,* 117 Tex.Cr.R. 307, 35 S.W.2d 727; *Hayes v. State,* 115 Tex.Cr.R. 644, 28 S.W.2d 556."

In *Smoot v. State,* 475 S.W.2d 281 (Tex. Cr.App.1971), the arrest was for speeding. This Court held it to be an arrest and that the officers were authorized to search a cigarette box after Smoot got out of the car.

It is good police practice for officers to make a, cursory search for weapons in the immediate vicinity of the driver as the Illinois court held in the *Cannon* case, supra.

The statutes of Texas authorize the arrest of an offender of the traffic laws and taking him into custody. This Court has upheld the search of the person after an arrest as well as a limited search of his car. The Supreme Court has upheld the arrest for traffic regulation violators and the search of their persons even though the arresting officer was not in fear of his life. It also recognizes the right of the officer to search in the vicinity of where the arrest has been made.

The search in the present case is not unreasonable.

The order revoking probation was proper. The judgment should be affirmed.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

The State, with leave of this court, has filed a motion for rehearing in which the State argues that the court erred in reversing the probation revocation of the appellant which was based on evidence obtained from an illegal search and seizure. The contention, which is founded on a dissent in the original opinion, is advanced that the appellant waived his objection to this evidence by taking the stand and admitting possession of the items taken in the search. Based on our reevaluation of case law and the facts as shown in the record, the State's motion for rehearing is overruled and the judgment is reversed. In explanation of this result, we have set forth in some detail previous state law and the effects of our ruling today based on *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

### I.

█ It has long been the rule of this state that the admission of improper evidence cannot be urged as grounds for reversal where the defendant gives testimony on direct examination which establishes the same facts as those objected to. *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975); *Palmer v. State,* 475 S.W.2d 797 (Tex.Cr. App.1972). This principle is sometimes referred to as the doctrine of curative admissibility. 5A C.J.S. Appeal and Error § 1724(3)(b) at 954 (1958). A corollary to this rule is that the harmful effect of improperly admitted evidence is not cured by the fact that the accused sought to meet, destroy, or explain it by the introduction of rebutting evidence. *McLaughlin v. State,* 109 Tex.Cr.R. 307, 4 S.W.2d 54 (1928); *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr. App.1973); *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr.App.1973); 5 Tex.Jur.2d, Appeal and Error—Criminal, § 446. The distinction between these two rules was most

clearly presented in *Nicholas v. State,* supra; at 174–175, where the following language was used:

" . . . the improper admission of evidence over objection is rendered harmless by the unobjected-to admission of other evidence *of substantially the same facts*; whereas, the introduction of evidence seeking *to meet, destroy, or explain* the erroneously admitted evidence does not render the error harmless. The rationale should be equally clear: if a fact be proven without objection, its erroneous proof over objection, although still error, is harmless error since the same facts have been proven without objection. On the other hand, presentation of *other* evidence which does *not* prove those facts erroneously admitted, but only tends to meet, destroy, or explain the erroneously admitted evidence, can hardly be considered to cure the error within the rationale of the first rule. . . . "

Thus if a defendant takes the witness stand to refute, deny, contradict, or impeach evidence or testimony properly objected to, no waiver of the objection occurs. But if a defendant in testifying admits or confirms the truth of the facts or evidence objected to, even if attempting to create a defense based on or beyond those facts, a waiver of the objection does occur. The one possible exception to this principle is that no waiver will be found where a defendant objects to evidence or testimony not tied directly or indirectly to the elements of the case and then in testifying himself admits those facts to be true. This exception is illustrated by *Alvarez v. State,* supra, in which a portion of a confession saying, "I always carry a pistol with me because I shot and killed a man in Lubbock not too long ago and am afraid of his people," was properly objected to as showing an extraneous offense. This court found that the objection was not waived when the defendant took the stand and admitted on direct examination that the statement was true in attempting to explain the incident. This was an extraneous offense, not evidence tied to the elements of the case but useful only to show the character of the defendant. However,

this case appears to contradict *Robbins v. State,* 481 S.W.2d 419 (Tex.Cr.App.1972); *Cook v. State,* 409 S.W.2d 857 (Tex.Cr.App. 1966), and *Meadowes v. State,* 368 S.W.2d 203 (Tex.Cr.App.1963), all of which held that objection to improper evidence of an extraneous offense was waived when the defendant on direct examination confirmed such facts. We express no opinion now as to this point. However, where the defendant's testimony *refuted* the State's extraneous offense evidence, *Jackel v. State,* 506 S.W.2d 229 (Tex.Cr.App.1974), or where the extraneous offense was admitted on *cross-examination* of the defendant, *Autry v. State,* 159 Tex.Cr.R. 419, 264 S.W.2d 735 (1954), there was no waiver of the objection.

The distinction this court has drawn between when a defendant admits substantially the same facts thereby waiving proper objection to other testimony or evidence on those facts and when a defendant has merely sought to meet, destroy, or explain the erroneously admitted evidence and thus not waived his objection is best understood by examining the specific facts of individual cases.

The principle that a defendant can waive a proper objection by his own testimony confirming the same facts or evidence objected to was established early in Texas. In *Dawson v. State,* 38 Tex.Cr.R. 9, 40 S.W. 731 (1897), in a trial for conspiracy to commit arson, a letter written by a third party which was sent but never received by the defendant was admitted into evidence. This court reversed the trial court even though the defendant, when he took the stand, confirmed the identity of the party who had written the letter and then attempted to explain the contents of said letter. This court noted that " . . . this did not render said letter admissible. It was admitted over his objections, and he was then driven to make the best shift he could to explain its contents." This case, standing for the principle that making *use* of evidence objected to in order to refute the implication given to it by the State does not waive the objection, is similar to the more recent case of *Nicholas v. State,* su-

pra, where the defense witness made use of a State exhibit, entered over proper objection, to show no penetration had occurred in the rape case. This court held there was no waiver because the *use* of the exhibits was a predicate for rebutting their incriminating effect, i. e., that appellant was seeking to meet and destroy the evidence rather than admitting the State's allegations as truthful.

Other early opinions include *Attaway v. State,* 41 Tex.Cr.R. 395, 55 S.W. 45 (1900), in which the State's witness, in an attempt to show motive for the murder, testified to what the deceased had said he would tell as a witness against the appellant in another case. The defendant objected to this testimony as hearsay. The court held that the objection was not waived by the defendant introducing a witness who rebutted the testimony of the State's witness as to what the deceased would have said. Thus there was no confirming of the facts, but a refutation of them. The court therein commented, "Of course, after illegal testimony was admitted, the defendant could but make the best of the situation, and then offer other testimony if he had it, and rebut or destroy the effect of the illegal testimony. . . ."

The first case to use the often quoted phrase "meet, destroy, or explain" was *McLaughlin v. State,* supra. This case led to much confusion as to the meaning of the word "explain," in regard to whether a defendant can admit as truthful evidence he objects to and still claim his objection on the ground he is "explaining" those facts. A careful reading of the case clearly shows this is not proper and waiver occurs. On its facts, the defendant objected to the use of the evidence of intoxicating beverages seized under an improper search warrant. However, the defendant took the stand and admitted that he had on hand 420 bottles of beer, a 50 gallon barrel in which to make it, and some 200 empty bottles. His defense was that he was making and had the beer to be used by himself and wife as medicine. The court affirmed the conviction on the ground the defendant had waived the objection to the improper search and seizure

noting that "None of those cases, and in fact no others known to us, hold that the accused can admit the truth of the very testimony to which he is objecting and thereafter claim injury or hurt of a reversible character arising by virtue of the admission of the testimony originally objected to."

Other cases in which no waiver of a proper objection occurred where the defendant's testimony only refuted and did not confirm the evidence objected to include *Trollinger v. State,* 153 Tex.Cr.R. 364, 219 S.W.2d 1018 (1949) (Statement made by defendant to jailer which was improperly admitted over objection and objection was not waived where defendant took the stand and gave his version of conversation which refuted or rebutted jailer's version. The difference between "I hope all the sons-of-bitches are dead" and "They may die" is apparent and would affect the jury in their deliberation.), and *Lovell v. State,* 525 S.W.2d 511 (Tex.Cr. App.1975) (State introduced over objection the confession of defendant that he had hit child. Information elicited by defense counsel of defense witnesses mentioned the child beating but was intended to show that defendant's conscious appreciation was affected by previous glue sniffing at the time of the alleged incident. This court held that appellant did not waive the objection since the questions were directed to the appellant's state of mind, i. e., his use or non-use of glue or drugs, a fact not mentioned in the confession.)

A number of recent cases have shown that waiver of a proper objection to improper evidence occurs if the defendant admits the existence of those facts or evidence even though he is trying to "explain" the circumstances of those facts: *Parker v. State,* 384 S.W.2d 712 (Tex.Cr.App.1964) (Defendant testified he had the capsules in his hand thus waiving his objection, even though he went on to explain that he had just picked them up off the floor of his truck and did not know what they contained); *Baity v. State,* 455 S.W.2d 305 (Tex.Cr.App.1970) (Defendant testified on direct examination he had stated to officer

he had a money box in his possession and that it had come from the Piccadilly Cafeteria, thus waiving his objection to the police officer's testimony to those same facts.); *Batiste v. State,* 464 S.W.2d 149 (Tex.Cr. App.1971) (Defendant waived challenge to illegality of search producing eyeglasses introduced into evidence where on direct examination defendant testified that he had the glasses, though he claimed the officer had placed them on him.); *Moulton v. State,* 486 S.W.2d 334 (Tex.Cr.App.1971) (Question of legality of search producing checks was waived when defendant admitted he had possession of checks at home even though he tried to explain that his wife had brought the checks home as scratch paper for children to play with.); *Creel v. State,* 493 S.W.2d 814 (Tex.Cr.App. 1973) (Challenge to items obtained in search of car waived when defendant took stand and admitted items were in his car and then attempted to explain them away.); *Warren v. State,* 514 S.W.2d 458 (Tex.Cr.App.1974) (Legality of search producing tires admitted into evidence did not have to be determined when defendant took stand and admitted the presence of the tires in his storeroom.); *Lester v. State,* 498 S.W.2d 927 (Tex.Cr. App.1973) (Guns taken from defendants challenged as fruits of an illegal search and seizure waived when the defendants testified on direct examination that they had the guns in their possession and admitted having an exchange of gunfire with the officers.). However, all of these cases, with the exception of *Alvarez v. State,* supra, were decided before or without considering *Harrison v. United States,* supra.

## II.

The record before us shows that appellant objected to the biphetamines being admitted into evidence for the reason that they were obtained as a result of an illegal search and seizure. After the trial court erroneously overruled the objection, the record shows the following exchange on direct examination of the defendant by his counsel:

"Q. Where did you find that (the bottle of biphetamines)?

"A. On the floorboard of the car.

"Q. . . . Would you state whether or not you were in the process of returning those pills to Sherry Rose?

"A. Yes, I was."

Thus appellant made no offer to rebut or refute the facts and evidence shown by the State. He merely confirmed that the pills were in fact in his car as found by the police, but he attempted to set up a defense based on the fact that he innocently acquired possession of the pills from his girlfriend. Under our prior view, this situation would most likely fall under the doctrine of curative admissibility and appellant's objection to the illegal search and seizure would have been deemed waived. *McLaughlin v. State,* supra; *Creel v. State,* supra; *Warren v. State,* supra.

However, it has been suggested by Judge Morrison in his concurring opinion in *Alvarez v. State,* supra, that the case of *Harrison v. United States,* supra, alters the doctrine of curative admissibility. In that case, the prosecutor had introduced three illegal confessions [1] at a previous trial, the substance of which showed that the defendant had gone to the victim's house intending to rob him and that the victim had been killed while resisting entry into his home. The defendant took the stand and testified that he had gone to the victim's home hoping to pawn a shotgun and that the victim was accidentally killed while the petitioner was presenting the gun to him for inspection, rebutting the State's evidence. Upon reversal and retrial, the prosecutor intro-

1. Harrison's initial confession was found to be not admissible against him because of statutory, not constitutional, grounds. Contrary to the District of Columbia Code and *Harling v. United States,* 111 U.S.App.D.C. 174, 295 F.2d 161 (1961), the first Harrison confession was elicited from him before the juvenile court waived jurisdiction over the offense which was committed just prior to Harrison's 18th birthday. The two subsequent confessions were inadmissible because of constitutional grounds. *Harrison v. United States,* 123 U.S.App.D.C. 230, 359 F.2d 214 (1965).

duced into evidence the testimony of the defendant from the first trial. The Supreme Court, speaking through Mr. Justice Stewart, reversed, based on the reasoning that petitioner might have given the testimony placing him at the scene of the killing "in order to overcome the impact of confessions illegally obtained" so that "his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." The Court found that the burden was on the Government to show that its illegal action in obtaining and introducing the confessions had not impelled the petitioner's testimony and that the Government had failed to do so. The Court's ruling is thus an extension of the exclusionary rule and attenuation concept, which excludes the fruits of illegal evidence unless the prosecutor is able to demonstrate that the knowledge is gained from an independent source or the evidence has been obtained by means sufficiently distinguishable from the underlying illegality to be purged of the primary taint. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Under *Harrison*, the "question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of the confessions illegally obtained and hence improperly introduced," the testimony is tainted by the same illegality that rendered the confessions themselves inadmissible.

■ We find that *Harrison* does in fact add a corollary to the doctrine of curative admissibility, i. e., the harmful effect of improperly admitted evidence which is obtained by illegal police practices is not cured when a defendant gives testimony on direct examination which establishes the same or similar facts unless the State can show that its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony. We did not here consider the issue whether this corollary should be extended to apply to testimony impelled by mere evidentiary hearsay evidence. See *United States v. Bohle*, 475 F.2d 872 (2nd Cir. 1973).

■ In applying this rule, or corollary, to the present facts, we find that appellant properly objected to the improperly admitted evidence which was obtained by an illegal search and seizure by the police and there is no showing by the State that its illegal action did not impel appellant's testimony. In fact, it is apparent that appellant would not have taken the stand if the illegally obtained evidence had not been admitted because that was the only evidence the State introduced. Appellant did not, therefore, waive his objection.

The State's motion for rehearing is overruled.

VOLLERS, J., not participating.

DALLY, Judge, dissenting.

Appellant's direct testimony confirming his possession of the biphetamine constitutes a waiver of his objection to its introduction by the State, under the well-established doctrine of curative admissibility. E. g. *Warren v. State*, 514 S.W.2d 458 (Tex.Cr. App.1974); *Lester v. State*, 498 S.W.2d 927 (Tex.Cr.App.1973); *Creel v. State*, 493 S.W.2d 814 (Tex.Cr.App.1973); *Moulton v. State*, 486 S.W.2d 334 (Tex.Cr.App.1972); *Palmer v. State*, 475 S.W.2d 797 (Tex.Cr. App.1972); *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App.1970); *Parker v. State*, 384 S.W.2d 712 (Tex.Cr.App.1964); *McLaughlin v. State*, 109 Tex.Cr.R. 307, 4 S.W.2d 54 (1928). I vigorously dissent to the majority opinion limiting the application of this doctrine, which results from the failure of the majority to recognize the fundamental factual and legal distinctions between the issue presented in *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) and the issue presented by the case before us.

In *Harrison*, the facts of which are adequately set out in the majority opinion, the Supreme Court held that where a defendant is "impelled" to testify because of the introduction by the prosecution of an unlawfully obtained confession, his testimony is the inadmissible fruit of the unlawful confession and may not be used against him in a

subsequent retrial. In the instant case, we are not asked to decide whether appellant's trial testimony may be used by the State as evidence against him in a retrial, or for any other purpose. Rather, we are asked to decide whether appellant, by having admitted in direct testimony that he was in possession of the biphetamine at the time of his arrest, waived his objection to the admission of the biphetamine by the State. *Harrison* simply does not speak to this question of waiver.

It is as if you were comparing apples and oranges to compare *Harrison,* a Fifth Amendment case, with the Fourth Amendment cases from which the doctrine of curative admissibility has evolved. The dissimilarity of *Harrison* and the instant case is demonstrated by the fact that Harrison's trial testimony more nearly fits the corollary to the curative admissibility doctrine announced in cases such as *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr.App.1973) than it does the doctrine itself. That is, Harrison did not testify to substantially the same facts as set out in his confessions, nor did he otherwise admit the truth of the confessions. Rather, he sought to meet or rebut the confessions by testifying to a different version of events. This is, of course, in contrast to the instant case. Appellant, in his testimony, admitted possessing the biphetamine.

The majority contends that appellant was "impelled" to testify. I cannot agree. There is absolutely no evidence in the record that appellant's decision to take the stand was anything but completely voluntary. Granted, appellant was faced with a difficult problem of trial strategy. Believing that the biphetamine had been unlawfully seized, should he remain silent, accept the almost certain revocation of his probation, and rely on a reversal from this Court? Or, recognizing that the validity of the search was a close question and there was a chance this Court would affirm, should he take the stand to admit his possession of the drugs and tell an exculpatory version of events in hope that the probation would not be revoked? Such difficult decisions must be made in virtually every trial. It is a

price that is paid for having a system of justice that generally insists upon full trials before appellate review of points of law. It is a problem that can be avoided, within our system, only by doing what is done here, namely, reaching the wrong result as between the litigants. *Harrison v. United States,* 392 U.S. at 228, 88 S.Ct. 2008 (Mr. Justice Harlan's dissenting opinion).

The State's Motion for Rehearing should be granted and the judgment affirmed.

DOUGLAS and TOM G. DAVIS, JJ., joined.