**Wade Alan NEHMAN, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–84–155–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 17, 1987.

Charles F. Baird, and Michael B. Charlton, Houston, Mann & McConnell and John Mann and Ed McConnell and Selden B. Hale, III, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., and Ebelardo Lopez, Asst. Dist. Atty., Potter County, Robert Huttash, State Pros. Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before FENDER, C.J., and JOE SPURLOCK, II and FARRIS, JJ.

## OPINION ON REMAND

JOE SPURLOCK, II, Justice.

Appellant was convicted by a jury of the murder of Charles Baldwin. *See* TEX.PENAL CODE ANN. sec. 19.02(a)(1) (Vernon 1974). The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections. This court affirmed the conviction in an unpublished opinion, No. 2–84–155–CR, delivered March 7, 1985. The Court of Criminal Appeals granted review and then ruled that appellant's written confession was obtained in violation of his right to counsel and should not have been admitted into evidence. *Nehman v. State*, 721 S.W.2d 319, 323 (Tex.Crim.App.1986). The Court initially remanded to the trial court for a new trial, but upon the State's motion for rehearing, remanded the cause to this court solely to consider whether the error in admitting the confession was rendered harmless by the "doctrine of curative admissibility." *Nehman*, 721 S.W.2d at 324.

We hold that it was not harmless error and remand to the trial court for a new trial.

The facts of this case are extensively detailed in the prior opinions of this case. We will discuss them only as necessary to explain our holding. On April 22, 1982, the bullet-riddled body of Charles Baldwin was discovered near a rural highway in Potter County, Texas. Based upon papers found on the body, Amarillo police issued a nationwide bulletin for a missing pick-up last registered in California to Baldwin. The pick-up was seen in a roadside park in Iowa in the early morning hours of May 6, 1982.

Iowa state troopers arrested a man found sleeping in the bed of the vehicle. The man was subsequently identified as the defendant, Wade Nehman. Nehman was unarmed, but there was a .22 caliber revolver inside a suitcase. The truck was impounded and later examined by law enforcement officers for clues to the murder.

Amarillo officers drove Nehman back to Texas. During the drive, Nehman admitted to one of the officers that he killed Baldwin in self-defense. Baldwin had given a ride to the hitch-hiking Nehman in Nevada. They traveled eventually to Amarillo with Nehman doing most of the driving while Baldwin steadily drank vodka and orange juice. In Amarillo, the two men quarreled about Nehman's desire to stay in Amarillo and work and Baldwin's wish that Nehman agree to drive Baldwin to his destination. Nehman agreed to go, but on the outskirts of town Baldwin began playing with a hunting knife and talking in an agitated manner. Nehman feared Baldwin was about to stab or kill him.

Nehman suddenly stopped the truck, causing Baldwin to drop the weapon. There was a .22 caliber revolver between the seats. Nehman grabbed it and told Baldwin to cool down. When he seemed to reach for the knife, Nehman cocked the hammer and warned Baldwin to calm down. The two men began to wrestle over the gun. A shot was fired, Baldwin said he had been hit, but kept fighting. Several more shots were fired, until Baldwin slumped over with a fatal wound to the head. Nehman said he panicked, found a deserted road, dumped the body, and headed home to Iowa where he was wanted for escaping from an Iowa half-way house. At trial, Nehman attempted to introduce evidence that Baldwin had prior felony convictions, including two for murder.

Nehman sought unsuccessfully to suppress his confession. His objections were overruled and the trial court ruled it admissible. The State introduced the confession, but whited out exculpatory portions which raised self-defense. Nehman's attorney then introduced the entire confession and Nehman took the stand during the guilt-innocence phase of the trial.

█ The State argued on appeal that even if the confession should have been suppressed, the defendant had introduced the confession himself and had testified, thus curing or waiving any error under the doctrine of "curative admissibility." Curative admissibility is used by appellate courts when they have found it error to have admitted some piece of evidence over timely objection. *See Sweeten v. State*, 693 S.W.2d 454, 456 (Tex.Crim.App.1985) (opinion on reh'g). The court then determines whether the defendant presented the same evidence or testimony to which he previously objected. *Id.* If so, the error is considered "cured" by the defendant's action of putting the testimony or evidence before the trier of fact. *Id.*

There is also a well-recognized exception to the doctrine. The error is *not* waived if the defendant put on the same kind of evidence "only to *rebut, destroy, or explain* the effect of the evidence." *Id. See generally Maynard v. State*, 685 S.W.2d 60 (Tex.Crim.App.1985); *Dawson v. State*, 38 Tex.Crim. 9, 40 S.W. 731, 733–34 (App. 1897). The Court of Criminal Appeals further explained the exception in *Thomas v. State*, 572 S.W.2d 507 (Tex.Crim.App. 1976):

> Under *Harrison*, the 'question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of the confessions illegally obtained ...' the testimony is tainted by the same illegality that rendered the confessions themselves inadmissible.

> We find that *Harrison* does in fact add a corollary to the doctrine of curative admissibility ... [the error] is not cured when a defendant gives testimony on direct examination which establishes the same or similar facts unless the State can show that its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony.

*Thomas*, 572 S.W.2d at 516, citing *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

In the case before us, the trial court ruled after a pretrial hearing that Nehman's confession was admissible. The State offered part of the confession and it was admitted with a large portion of the second page whited out. The obliterated portion dealt with Nehman's claim that Baldwin ignored his warning to calm down and in fact attacked Nehman. For the defense to explain the circumstances of the shooting and present it as anything other than a cold-blooded execution, Nehman had to introduce the *entire* confession. Once he took the stand, he admitted he made the confession but also testified in great detail how Baldwin was shot as the two men struggled for the gun in the cab of the pick-up. At times, Nehman and one of his attorneys used the actual seats of the truck to re-create for the jury the events as Nehman claimed they occurred. There were no witnesses to the fight, therefore Nehman had no one he could call without getting on the stand himself.

After reviewing the record, we find that the State has not established that its action in obtaining and introducing Nehman's confession did not impel his testimony. *Sweeten*, 693 S.W.2d at 459. We reverse the conviction and remand for a new trial.